IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| DAD'S PRODUCTS COMPANY, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 03-350 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | The Honorable Sean J. McLaughlin |
| SERGEANT'S PET CARE PRODUCTS, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT PURSUANT TO RULE 56
OF THE *FEDERAL RULES OF CIVIL PROCEDURE*

Defendant Sergeant's Pet Care Products, Inc. ("SPCP") files this Memorandum in Support of its Motion for Summary Judgment Pursuant to Rule 56 of the *Federal Rules of Civil Procedure*.

I.    **INTRODUCTION**

This action centers around various agreements that Plaintiff and Pet Life Foods, Inc. ("Pet Life") – a debtor in a bankruptcy case pending in Michigan and not a party to this action[1] – entered into with respect to the acquisition of certain assets of another non-party, Gaines Pet Foods Corporation ("Gaines"). Nearly two years after this acquisition and in an unrelated transaction, Pet Life sold a fraction of the assets it purchased from Gaines to SPCP. However, Pet Life expressly retained its obligations under the contracts relating to the Gaines' deal, including any obligations that

_____

[1] Pet Life's Chapter 7 bankruptcy case, styled as *In re Pet Life Foods, Inc.*, Case No. SG-02-07387, was filed in the United States Bankruptcy Court for the Western District of Michigan, Southern Division (the "Pet Life Bankruptcy Case"). A copy of the docket is attached hereto as **Exhibit 1** for the Court's reference. This Court may take judicial notice of the Pet Life Bankruptcy Case. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-427 (3d Cir. 1999) (court may take judicial notice of another judicial proceeding).

it may have owed to Plaintiff. At no time did SPCP become a guarantor of or an obligor for such alleged obligations. Nevertheless, and despite the plain language of the operative documents, Plaintiff now claims that SPCP is somehow liable for Pet Life's obligations to Plaintiff.

As is demonstrated below, summary judgment against Plaintiff is appropriate on all of the claims asserted against SPCP. *First*, as a threshold matter, Plaintiff has improperly initiated and pursued this suit against SPCP in this Court when Plaintiff's claims are solely within the power of the Trustee in the Pet Life Bankruptcy Case to pursue. As such, this Court is without proper power or authority to adjudicate Plaintiff's claims and Plaintiff's claims cannot go forward in this action. *Second*, even if Plaintiff's claims are properly before this Court (which they are not) and even if Plaintiff has standing to pursue them (which it does not), each and every one of Plaintiff's claims must fail because they are unsupportable as a matter of law.

## II.    RELEVANT BACKGROUND

The relevant facts in this matter are undisputed and evident from the clear, unambiguous documents attached to, relied upon and/or relevant to Plaintiff's Complaint. As a threshold matter, Plaintiff is not a party to any contract with SPCP. Instead, all of Plaintiff's claims are premised on the theory that SPCP is liable to it for alleged obligations arising from contracts to which Plaintiff and Pet Life are solely parties and/or to which Plaintiff is not a party.

### A.    The Gaines' Acquisition and the Settlement Agreement

Gaines was a manufacturer and distributor of pet treats, dog biscuits and other pet food products. Complaint ¶5. In November 1999, Plaintiff, Pet Life and Gaines, among other entities not parties to this action, entered into an Asset Purchase Agreement (the "Asset Purchase Agreement") and a Supplier and Royalty Agreement (the "Royalty Agreement") by which Plaintiff and Pet Life agreed to purchase all intellectual property, customer and supply lists, licenses and permits, goodwill

- 2 -

and certain assets of Gaines for the purchase price of $2,550,000.00. Complaint ¶¶10, 11 and Complaint Exhibits A and B.[2] Under the Royalty Agreement, Plaintiff and Pet Life *jointly and severally* agreed to pay to Gaines a royalty based upon certain sales related to the assets purchased from Gaines (the "Royalty" or the "Royalty Payments"). Complaint ¶¶10, 15 and Complaint Ex. B (Ex. 2 hereto), *see* Article 3.[3] After execution of the Royalty Agreement, Pet Life and Plaintiff began to make their respective payments of the Royalty. Complaint ¶19.

Plaintiff and Pet Life thereafter formed Maple Leaf Pet Care LLC ("Maple Leaf") to provide administrative services for certain joint customer accounts purchased from Gaines and to serve as a repository for ownership of certain trademarks acquired under the Asset Purchase Agreement. Complaint ¶20. In addition, in November 1999, Plaintiff and Pet Life allegedly entered into a Sales and Marketing Agreement (the "Marketing Agreement") with Whitecap, Inc. (not a party to this action) and two non-party individuals (collectively, "Whitecap"). Pursuant to the Marketing Agreement, Whitecap was to provide various sales and marketing services to certain customer accounts purchased by Plaintiff and Pet Life under the Asset Purchase Agreement in exchange for certain compensation. Complaint ¶21 and Complaint Exhibit C.

---

[2] Plaintiff states that a copy of the Royalty Agreement is attached to the Complaint as Exhibit B, but no copy of the Royalty Agreement was attached to the Complaint served on SPCP. Accordingly, a copy of the Royalty Agreement is attached hereto as **Exhibit 2**.

[3] More particularly, the Complaint alleges that Plaintiff and Pet Life jointly and severally agreed to pay a royalty equal to 2% of the net sales of existing pet food products and pet treat products made by Plaintiff and Pet Life to existing customers of Gaines for each royalty year during the royalty term, with a minimum yearly royalty of $300,000.00 and a maximum annual royalty of $440,000.00. Complaint ¶¶10, 15 and Complaint Ex. B (Ex. 2 hereto), Article 3.

In August 2001, Plaintiff and Pet Life entered into a Settlement Agreement (the "Settlement Agreement") pursuant to which Plaintiff and Pet Life fixed their respective obligations under the Royalty Agreement and agreed to terminate the Marketing Agreement. More specifically, Plaintiff and Pet Life agreed (a) that Pet Life would pay 60% and Plaintiff would pay 40% of the monies due to Gaines under the Royalty Agreement, and (b) to share any expenses related to the termination of the Marketing Agreement (such as termination payments to Whitecap) equally. Complaint ¶¶23-25 and Complaint Exhibit D, *see* ¶¶1, 4. Gaines and Whitecap were not parties to the Settlement Agreement.

**B.    SPCP's Purchase of Certain of Pet Life's Assets**

In September 2001, Pet Life and SPCP entered into a Trademark License and Transfer Agreement (the "Transfer Agreement") pursuant to which SPCP purchased certain assets, including certain specified trademarks, that Pet Life had acquired from Gaines. A copy of the Transfer Agreement is attached as **Exhibit 3**. *See* Ex. 3, ¶1. In exchange, SPCP agreed that SPCP would make up to $320,000.00 in payments due by Pet Life to Gaines under the Royalty Agreement and certain additional payments due Whitecap under the Marketing Agreement. Complaint ¶¶26-28 and Exhibit 3, *see* ¶1.

In May 2002, SPCP, Pet Life and Pet Life's secured lender LaSalle Business Credit, Inc. ("LaSalle") entered into a Settlement and Cooperation Agreement (the "Cooperation Agreement"). A copy of the Cooperation Agreement is attached as **Exhibit 4**. Pursuant to the Cooperation Agreement, Pet Life, *inter alia*, released SPCP from any obligations under the Transfer Agreement with respect to any Royalty Payments to be paid by SPCP to Gaines on Pet Life's behalf. *See* Ex. 4, Recital C. The consideration for the release was SPCP's payment of $362,112.13 to LaSalle on

- 4 -

behalf of Pet Life for obligations due by Pet Life to LaSalle. *See id.*[4]  In addition, Pet Life agreed that SPCP could offset any obligation SPCP had to Pet Life (*e.g.*, the obligation to make payments to Gaines) against the $447,446.38 due from Pet Life to SPCP.  SPCP was not prepared to pay $362,112.13 to LaSalle on behalf of Pet Life unless and until SPCP was released from its obligation to make payments to Gaines on behalf of Pet Life.  The offset was designed as additional protection for SPCP.  The offset cleaned up any other possible obligation due to Pet Life by SPCP.  It is worthwhile to note that Plaintiff has not objected to the offset.

### C.    Plaintiff's Complaint Against SPCP

The gravaman of Plaintiff's Complaint is that the foregoing release of SPCP through the Cooperation Agreement violated obligations owed to Plaintiff and/or caused harm to and defrauded Plaintiff *and creditors of Pet Life*.  As conceded in Plaintiff's Complaint, however, Pet Life was at no time released, and indeed was expressly precluded from being so released, from its obligations and liabilities to Plaintiff under the Royalty Agreement.  *See* Complaint ¶18, Complaint Ex. B [Royalty Agreement] (Ex. 2 hereto) ¶4.4, Complaint Ex. 2 [Settlement Agreement], ¶¶1, 4.  In other words, Pet Life was still on the hook for the payments owed to Gaines.  Plaintiff's Complaint does not allege and the plain terms of the Royalty Agreement do not provide (nor does any other written agreement provide) that SPCP was in any way a "guarantor" or "obligor" of Pet Life's obligations to Plaintiff under the Royalty Agreement [or the Settlement Agreement].

---

[4] Recital C of the Cooperation Agreement references a May 2, 2002 Notification and Cancellation Agreement between Pet Life and SPCP (the "Notification Agreement").  A copy of the Notification Agreement is attached as **Exhibit 5**.  The operative terms and provisions upon which Plaintiff's claims are based with respect to SPCP's release from the Transfer Argement are also recited in part in the Notification Agreement.  The Notification Agreement also provides, however, that a no-offset letter (the subject of Paragraph 31 of Plaintiff's Complaint) is deemed of "*no force or effect*" and all parties to the Notification Agreement agree to the terms of the offset contained therein. Ex. 5, ¶6 (emphasis supplied).  Accordingly, Paragraph 31 of Plaintiff's Complaint is without any merit because it contradicts the plain terms of the Notification Agreement.

00649426.DOC

It is undisputed that as late as May 23, 2002, Plaintiff had been advised that Pet Life would not be making any further payments of the Royalty. *See* May 23, 2002 Agreement by and between Plaintiff, Pet Life and Shato Holdings Ltd. ("Shato")[5] (the "Agreement"), attached as **Exhibit 6**, p. 1. The Agreement was entered into long after the Transfer Agreement *and* after SPCP was released by Pet Life under the Cooperation Agreement. Nevertheless, through the Agreement, Plaintiff was only assigned all of Gaines' rights, if any, *against Pet Life* arising out of the Royalty Agreement. Ex. 6, ¶2 (emphasis supplied). Tellingly, and despite Plaintiff's present claim that SPCP is somehow obligated for Pet Life's failure to make further Royalty Payments, nowhere does the Agreement provide that Plaintiff was assigned any rights or claims *against SPCP*.

Plaintiff's Complaint seeks relief against SPCP for Plaintiff's decision to, on May 23, 2002, make a lump sum prepayment of the total Royalty to Gaines pursuant to the Settlement Agreement, above and beyond the amount that Plaintiff allegedly owed. Plaintiff's Complaint asserts claims against SPCP for: (1) Fraudulent Transfer; (2) Contribution; (3) Unjust Enrichment; and (4) Breach of Contract. Each of the foregoing counts, while pleaded as different causes of action, is nothing more than Plaintiff's "fraudulent transfer" claim disguised as something else. The controlling premise of each such claim is that Plaintiff and/or Pet Life's creditors were harmed and defrauded as a result of Plaintiff's release of SPCP from making further Royalty Payments.[6]

**D.     The Trustee's Complaint Against SPCP in the Pet Life Bankruptcy Case**

In July 2004, the Chapter 7 Trustee in the Pet Life Bankruptcy Case brought fraudulent transfer and other claims against SPCP with respect to, *inter alia*, the transactions and agreements at

---

[5] Shato is identified as the owner of all equity interests in Gaines. *See* Ex. 6, p. 1.

[6] It is undisputed that Plaintiff did not give notice to Pet Life of its decision to pay off Gaines.

00649426.DOC

issue in or related to those raised in Plaintiff's Complaint.  A copy of the Trustee's Complaint against SPCP is attached as **Exhibit 7**.  The Trustee's Complaint against SPCP seeks to have various transfers avoided for the benefit of Pet Life's estate and its creditors.  *See* Ex. 7, Counts I – IV.

## III.  ARGUMENT

### A.    Applicable Legal Standards

#### 1.    Standard of Review

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the *Federal Rules of Civil Procedure* designed to secure a just, speedy and inexpensive determination of every action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  Summary judgment should be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  *Keck v. PPL Electric Utilities Corp.*, 2004 U.S. App. LEXIS 8971 (3d Cir. 2004).  In deciding whether there is a genuine issue of material fact, the Court must view all facts and inferences in a light most favorable to the non-moving party.  *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).[7]

#### 2.    Applicable Contract Interpretation Principles

A court's purpose in examining a contract is to interpret the intent of the contracting parties, as they objectively manifest it.  The process for interpreting a contract proceeds in two steps.  The

---

[7] To support denial of a motion for summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact-finder could base a verdict for the non-moving party and one which is essential to establishing a claim.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  The non-moving party cannot simply show that there is some metaphysical doubt as to material facts.  *Matsushita*, 475 U.S. at 586.  If the non-moving party's evidence is merely colorable or not significantly probative, summary judgment should be granted.  *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).  The non-moving party's response, by party's affidavits or as otherwise provided for in the *Federal Rules*, must set forth specific facts showing that there is a genuine issue for trial.  Fed.R.Civ.P. 56 (e); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996).  The non-moving party may not simply rely on mere allegation, conclusory or vague statements or general denials in the pleadings.  *Trap Rock Indus. v. Local 825, Int'l Union of Operating Engineers*, 982 F.2d 884, 890 (3d Cir. 1992).

- 7 -

court must first make a preliminary inquiry as to whether the contract before it is ambiguous. This question is an issue of law for the court to resolve. In determining whether a contract is ambiguous, the court assumes the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous, the intent is to be discovered only from the express language of the agreements. Only if the court determines that a given term is ambiguous, will the interpretation of that term become a question of fact for the trier of fact to resolve. *See Sanford Invest. v. Ahlstrom Machinery Holdings*, 198 F.3d 415, 421 (3d Cir. 1999) (setting forth foregoing principles and affirming district court's grant of summary judgment on grounds the contracts were not ambiguous).

**B.    Summary Judgment Should Be Granted in Favor of Defendant on Count I of Plaintiff's Complaint for "Fraudulent Transfer"**

**1.    Applicable Law on Fraudulent Transfer Claims**

Pennsylvania has codified the requirements necessary to establish a fraudulent transfer. Under section 5104 of the Pennsylvania Uniform Fraudulent Transfer Act ("PUFTA"), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> > (i) was or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> >
> > (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

12 Pa.C.S.A. § 5104.

In an action for relief against a transfer or obligation, a creditor (subject to certain limitations) may obtain, among other things: (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; and (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable law. *See* 12 Pa.C.S.A. § 5107.[8]

Pursuant to 11 U.S.C. § 544(b), it is within the power of the *trustee* in a bankruptcy proceeding to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . .." 11 U.S.C. § 544(b); *see e.g.*, *In re INA Mfg. Corp.*, 2002 WL 1740700 (D.Minn. 2002) (the power vested in the trustee to avoid fraudulent transfers is exclusive) (*aff'd* 60 Fed.Appx. 653  (8th Cir. 2003), *cert. denied* 540 U.S. 1011; *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998) (trustee has sole responsibility to represent the estate and bring actions to marshal assets for the benefit of estate's creditors).

District courts have refused to adjudicate claims or allow fraudulent transfer claims to proceed against a non-debtor where the claims involve property of a debtor's estate and/or are properly before a bankruptcy court on behalf of a debtor's estate. *See Cedarbrook Plaza, Inc. v. Gottfried*, 1997 WL 330390 (E.D.Pa. 1997) (granting motion to dismiss action against non-debtor transferee of property, filed by creditor, alleging fraudulent transfer pursuant to PUFTA and alter ego theory between transferee and bankruptcy-debtor); *Constitution Bank v. DiMarco*, 155 B.R. 913 (E.D. Pa. 1993) (granting non-debtor's motion for judgment on the pleadings in a lawsuit filed against a non-debtor in

---

[8]  A creditor may also obtain certain equitable relief including an injunction, the appointment of a receiver or other appropriate equitable relief. *See* 12 Pa.C.S.A. § 5107.  Such relief is not being sought here.

district court for fraudulent transfer pursuant to Pennsylvania law); *see e.g., In Re: Stein*, 314 B.R. 306 (D.N.J. 2004) (affirming Bankruptcy Court's decision to preserve its jurisdiction by enjoining creditors from pursuing fraudulent transfer and preference claims against non-debtor); *In the Matter of Eagle Enterprises, Inc.* (Bankr. E.D. Pa. 2001) (holding that unsecured creditors could not receive relief from automatic bankruptcy stay because claims would be duplicative litigation that could risk inconsistent rulings).

**2.    Plaintiff's "Fraudulent Transfer" Claim Should be Dismissed Because Such Claim is an Exclusive Matter for the Trustee in the Pet Life Bankruptcy Case**

Plaintiff's "fraudulent transfer" claim in Count I necessarily and undisputedly involves not only property that is within the Pet Life bankruptcy estate, but also the rights of Pet Life's creditors with respect to the same. Plaintiff's claim plainly comes within the ambits of 11 U.S.C. § 544, as Count I of Plaintiff's Complaint alleges that "Pet Life's release of [SPCP] under the Transfer Agreement was made with actual intent to hinder, delay and defraud [Plaintiff] and Gaines *as creditors of Pet Life*." Complaint ¶45 (emphasis supplied). Alternatively, Plaintiff alleges that Pet Life's release of SPCP under the Transfer Agreement was made *without Pet Life receiving a reasonably equivalent value* in exchange for the transfer and Pet Life "was engaged in a business or transaction for which the remaining *assets of Pet Life* were unreasonably small in relation to the business or transaction or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due." Complaint ¶46 (emphasis supplied).

Furthermore, Plaintiff's requested relief of money damages related to its alleged overpayment of the Royalty is improper as a matter of law for the claim asserted, as the proper remedy for Plaintiff's claim is to "avoid" the allegedly fraudulent transaction at issue and return the parties to the

- 10 -

position that they were in before the transaction.  *See* 12 Pa.C.S.A. § 5107.  As such, the relief

flowing from Count I, as a matter of law, is not to award to Plaintiff the money damages that Plaintiff

requests, but is to unwind or avoid the transaction(s) at issue in Plaintiff's Complaint -- to which

debtor Pet Life is a party.  Granting such requested relief would undoubtedly involve and affect Pet

Life's creditors and property of the Pet Life Bankruptcy estate.  As such, Count I implicates 11

U.S.C. § 544 and the exclusive powers of the Trustee in the Pet Life Bankruptcy Case, and Plaintiff

lacks standing to pursue it in this Court.

The Trustee in the Pet Life Bankruptcy Case has already brought claims against SPCP on

behalf of the estate of Pet Life seeking to, *inter alia*, avoid various transactions related to and/or at

issue in Plaintiff's Complaint.  Accordingly, the Trustee has elected to act within the broad powers

afforded under 11 U.S.C. § 544 and pursue SPCP on behalf of Pet Life's estate with respect to alleged

fraudulent transactions.  Therefore, Plaintiff's claims in this action should be dismissed in order to,

*inter alia*, avoid duplicative litigation, inconsistent results and to allow the Trustee to exercise the

exclusive power bestowed upon it by statute on behalf of Pet Life's estate and its creditors.  *See*

Section III.B.1., *supra*.

### 3. Even if Plaintiff Has Standing to Pursue Count I of Its Complaint for "Fraudulent Transfer," Count I Still Fails as a Matter of Law

#### a) Count I fails to state a valid, cognizable claim for relief

Count I of Plaintiff's Complaint fails to state a valid claim under PUFTA and should

be dismissed.  To prevail on its "fraudulent transfer" claim, Plaintiff must plead and prove the

requisite elements under PUFTA (*see* Section III.A.1., *supra*).  Here, Plaintiff has not properly

pleaded such elements including, among other things, that any transaction at issue should be

"undone" or "avoided" because Pet Life was rendered insolvent as a result of a transfer of assets and,

at the time of such transfer, Plaintiff was owed a debt from Pet Life which cannot now be paid to

- 11 -

Plaintiff because assets were transferred away for less than market value. Rather, Plaintiff alleges that "as a direct and proximate result of the fraudulent transfers described herein, [Plaintiff], in its own right, and as the assignee of and successor to Gaines under the Royalty Agreement, has sustained damages, including the amounts paid by [Plaintiff] in excess of its proportionate share of the Royalty under the Royalty Agreement and Transfer Agreement." Complaint ¶48. Count I, as pleaded, improperly seeks to utilize a "fraudulent transfer" claim to recoup monies that Plaintiff voluntarily paid *after* the alleged "fraudulent transfer" occurred instead of seeking an "unwinding" or "avoidance" of the allegedly fraudulent transfer as permitted under PUFTA. Given Pet Life's bankruptcy filing, the reason for Plaintiff's pleading as such is obvious.[9] Count I, therefore, should be dismissed. *See* Complaint ¶¶45-48; 12 Pa.C.S.A. §5104.

### b)      Count I should be dismissed for failure to join necessary parties

Rule 19 of the *Federal Rules of Civil Procedure* provides that a person . . . *shall* be joined as a party in the action if:  (1) in the person's absence complete relief cannot be accorded among those already parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed. R. Civ. P. 19.

Here, even if Plaintiff had standing to pursue its fraudulent transfer claim, all of the necessary parties for full adjudication of the claim are not before the Court. As stated above, the proper remedy

---

[9] If the transaction is undone SPCP will recover the $362,112.13 payment made to a secured creditor (which payment benefited all creditors) and then will be obligated to pay approximately $230,000 to or for the Pet Life bankruptcy estate. This is a case the Trustee is not willing to bring since it is a net detriment to the bankruptcy estate.

for Plaintiff's fraudulent conveyance claim is to "avoid" the allegedly fraudulent transaction at issue and return the parties to the position that they were in before the transaction. *See* 12 Pa.C.S.A. § 5107(a). SPCP paid $362,112.13 to LaSalle on behalf of Pet Life in consideration of SPCP's release from certain obligations. *See* Ex. 4, Recital C. Plaintiff alleges this is a "fraudulent transfer." *See* Complaint ¶¶45-48. However, LaSalle – the party to whom the alleged fraudulently transferred funds were paid in connection with the alleged fraudulent transaction – is not a party to this action. Plainly, in LaSalle's absence, complete relief cannot be accorded in this action, as the disposition of Count I in LaSalle's absence could impair or impede LaSalle's ability to protect its interest and/or will subject parties to substantial risk of incurring multiple or inconsistent obligations.

Moreover, Plaintiff's "fraudulent transfer" claim is irrefutably predicated upon the intent of Pet Life – the debtor in the Pet Life Bankruptcy Case – regarding actions that Pet Life took and transactions that Pet Life entered into with respect to its obligations to Gaines. *See* Complaint ¶¶45-47. Therefore, Count I also cannot be adjudicated without the presence of Pet Life. However, Pet Life is not a named party and cannot now be named as a party to this proceeding due to the automatic stay in effect as a result of the Pet Life Bankruptcy Case. *See e.g., Cedarbrook*, 1997 WL 330390.

### c)  No genuine issues of fact exist with respect to Plaintiff's inability to establish the elements of a fraudulent transfer claim

No genuine issues of material fact exist with respect to Plaintiff's inability to establish any of the other requisites for proceeding with Count I of its Complaint. *First*, there is no evidence that Pet Life's release of SPCP under the Transfer Agreement was done with the alleged "intent to hinder, delay or defraud." Indeed, Plaintiff's own Complaint concedes that pursuant to Article 4.4 of the Royalty Agreement, upon notice to Gaines and *without releasing either Pet Life or Plaintiff from any of their obligations or liabilities* thereunder, Pet Life or Plaintiff could assign or delegate any or all of its rights or obligations under the Royalty Agreement. *See* Complaint ¶18 and Complaint Ex. B (Ex.

- 13 -

2 hereto), ¶4.4.   Accordingly, the plain and unambiguous terms of the Royalty Agreement and Plaintiff's own pleading establishes that – at all times relevant – Pet Life retained the obligation to make the Royalty Payments under the undisputed terms of the Royalty Agreement.

*Second*, the May 23, 2002 Agreement (by and between Plaintiff, Pet Life and Shato) is telling. The Agreement provides that Plaintiff has "[b]een advised by Pet Life that Pet Life will not be making any further payments of the Royalty." Ex. 6, p.1.  It also provides that "[Gaines] and Shato hereby release and discharge [Plaintiff] from all further obligations of every kind and nature whatsoever otherwise arising out of the Royalty Agreement; and *[Gaines] hereby assigns to [Plaintiff] all rights of [Gaines], if any, against Pet Life arising out of the Royalty Agreement.*  Ex. 6, ¶2.  The Agreement was entered into *after* the Cooperation Agreement whereby Pet Life released SPCP from making Pet Life's royalty payments to Gaines.   Nevertheless, Plaintiff was not assigned any rights as against SPCP, even though Plaintiff now claims SPCP is liable for Pet Life's failure to make certain Royalty Payments.   The Agreement further establishes that there simply was no "fraudulent transfer" because Plaintiff was fully aware that Pet Life did not intend to make any further payments of the Royalty (which was *after* SPCP's release from any Royalty obligations) and, therefore, there can be no intent to "hinder, delay or defraud" anybody. Accordingly, Count I likewise fails as a matter of law because Plaintiff has not and cannot establish the requisite elements to support Count I of its Complaint.[10]

---

[10] Count I also must fail because there is no genuine issue of material fact that Pet Life received value and consideration for the release of SPCP from any obligations regarding the Royalty Payments. "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied . . .." 12 Pa.C.S.A. § 5103(a). Equivalent value is also given if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or the exercise of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement or pursuant to a regularly conducted, noncollusive execution sale. 12 Pa.C.S.A. § 5103(b). Also, a transfer is not fraudulent if the transfer results

- 14 -

**C.      Summary Judgment Should Be Entered in Favor of Defendant on the Remaining Counts in Plaintiff's Complaint**

**1.      Plaintiff Cannot Sustain Any of Its Other Claims Because Such Claims are Exclusive Matters for the Trustee in the Pet Life Bankruptcy Case**

For the same reasons set forth in Section III.B., *supra*, Counts II, III and IV of Plaintiff's Complaint are improperly before this Court and, if at all, such claims are within the exclusive power of the Trustee in the Pet Life Bankruptcy Case to pursue. More particularly, Count II does nothing more than restate the same claim stated in Count I for "fraudulent transfer." Like Count I, Count II alleges that the release of SPCP from the Transfer Agreement "was not supported by adequate consideration and was given with the intent to defraud [Plaintiff] and [Gaines] as creditors of Pet Life." Complaint ¶50. Counts III and IV are also nothing more than a restatement of Count I for "fraudulent transfer" dressed up in terms of "unjust enrichment" and "breach of contract." For example, Count III contains the same allegation that is the subject and basis of Count I -- that Plaintiff was improperly required to pay Gaines more than it was required to pay under the Royalty Agreement. *See* Complaint ¶54. Count III contains no other or further allegations. Similarly, Count IV for "breach of contract" is merely Plaintiff's "fraudulent transfer" claim relabeled as something else and indisputably involves the same claims as Count I.

Counts II, III and IV – just like Count I – are claims that belong in the Pet Life Bankruptcy Case, if anywhere, because they are nothing more than poorly pleaded "fraudulent transfer" claims.

---

from enforcement of a security interest, subject to certain exceptions and limitations. *See* 12 Pa.C.S.A. § 5108(e).

The foregoing provisions establish that Pet Life received adequate consideration under the Cooperation Agreement in exchange for the release of SPCP. Pursuant thereto, SPCP offset its claim against Pet Life against Pet Life's claim against it. *See* Ex. 4, Recital C. In addition, SPCP wired $362,112.13 to LaSalle on behalf of Pet Life and SPCP actually paid such amount in order to be relieved of up to $230,000 in liabilities. *See id*. Moreover, the release of SPCP, and challenge to the transfer of the assets was pursuant to LaSalle's

As such, all of Plaintiff's claims involve the property of Pet Life's bankruptcy estate and/or the obligations and purported rights of Pet Life and its creditors. Therefore, Plaintiff lacks any standing or ability to pursue these claims in this Court (*see* Section III.B., *supra*) and they should be dismissed.

**2.    Defendant is Entitled to Summary Judgment on Plaintiff's Contribution Claim in Count II**

Contribution is proper only between joint tortfeasors.[11] 42 Pa.C.S. § 8324(a); *Mattia v. Sears, Roebuck & Co.*, 531 A.2d 789 (Pa.Super.Ct. 1987), *app. denied*, 546 A.2d 622 (Pa. 1988); *Kemper National P & C Co. v. Smith*, 419 Pa.Super. 295, 309, 615 A.2d 372, 380 (1992); *TVSM, Inc. v. Alexander & Alexander, Inc.*, 583 F. Supp. 1089, 1092 (E.D. Pa. 1984); *Richardson v. John F. Kennedy Memorial Hosp.*, 838 F. Supp. 979, 989 (E.D. Pa. 1993). Stated in other terms, "[c]ontribution claims are limited to tort actions among joint tortfeasors." *Unique Technologies, Inc. v. Micro-Stamping Corp.*, 2003 WL 21652284, *3 (E.D.Pa. 2003).

Plaintiff claims in Count II of its Complaint that "[h]aving paid more than its proportionate share of its liability for the Royalty under the Royalty Agreement, [Plaintiff] is entitled to contribution from [SPCP] to the extent of the benefit conferred upon [SPCP] by [Plaintiff's] payment." Complaint ¶52. Plaintiff's claim is not only nonsensical, but it is unsupportable. For obvious reasons, Plaintiff has not pleaded that Plaintiff and SPCP are "joint tortfeasors" liable in tort to some other party for some injury to persons or property. Absent such allegations, a contribution

---

exercising its rights pursuant to 9-610 of the Uniform Commercial Code. *See* Cooperation Agreement, Ex. 4, ¶B. For these reasons, Pet Life plainly received adequate value in exchange for the release of SPCP.

[11] "'[J]oint tort-feasors' means two or more persons jointly or severally liable in tort for the same injury to persons or property ... ." 42 Pa. C.S.A. § 8322; *Oviatt v. Automated Entrance Sys. Co., Inc.*, 583 A.2d 1223 (Pa.Super.Ct. 1990).

claim cannot exist. *See Kemper, TVSM, Unique Technologies, supra.* Accordingly, there is no genuine issue of material fact that allows Count II of Plaintiff's Complaint to be maintained.[12]

### 3.    Defendant is Entitled to Summary Judgment on Plaintiff's Unjust Enrichment Claim in Count III

"The doctrine of unjust enrichment is clearly inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Roman Mosaic & T. Co., Inc. v. Vollrath*, 313 A.2d 305 (Pa.Super.Ct. 1973)*; see also Third Nat'l Bank & Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 353 Pa. 185, 193 (1945) (same); *First Wisconsin Trust Co. v. Strasser*, 653 A.2d 688 (Pa.Super.Ct. 1995) ("the existence of the written note and/or mortgage agreement precludes a claim of unjust enrichment."). To establish an unjust enrichment claim, a plaintiff must prove: "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Ameripro Search v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa.Super.Ct. 2001). The doctrine of unjust enrichment does not apply simply because a defendant may have benefited as a result of the actions of a plaintiff. *Id.* For a court to find unjust enrichment, the retention of the benefit received must be "unconscionable." *In re Forman Enters., Inc.*, 681 B.R. 600, 611 (Bankr. W.D. Pa. 2002) (*citing Torchia on Behalf of Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. 1985)).

---

[12] To the extent that Plaintiff attempts to argue that some other theory of "contribution" supports Count II, Plaintiff's argument is without merit. No relevant terms of any operative agreements either expressly or by implication impose joint and several liability as between SPCP and Plaintiff. SPCP was neither a guarantor to nor an obligor of Pet Life's obligations under the Royalty Agreement (or Settlement Agreement). Furthermore, assuming *arguendo* any "joint and several" existed to arguably support any other purported "contribution" theory, SPCP was properly and effectively released by Pet Life from any obligations for further Royalty Payments by the Cooperation Agreement and/or Notification Agreement *before* Plaintiff made any alleged lump sum payment of the Royalty to Gaines. Therefore, Count I similarly lacks any basis.

00649426.DOC

Count III of Plaintiff's Complaint alleges that SPCP has been "unjustly enriched as a result of [Plaintiff] being compelled to pay in excess of its proportionate share of the Royalty under the Royalty Agreement." Complaint ¶54. However, Count III is improper and should be dismissed because each and every of Plaintiff's claims centers around the plain terms of written agreements – *i.e.*, the Royalty Agreement, the Marketing Agreement, the Settlement Agreement, the Transfer Agreement, the Cooperation Agreement, etc. Therefore, Plaintiff cannot pursue a claim for unjust enrichment in Count III. *See Lehigh Valley*, 353 Pa. at 193.

Moreover, even if, assuming *arguendo*, Plaintiff's claims in its Complaint were not based upon alleged rights, obligations and duties contained in written agreements, Plaintiff's unjust enrichment claim still cannot survive. There is no allegation in Plaintiff's Complaint (nor can there be) that *Plaintiff* conferred some benefit upon SPCP and such benefit was unjust. To the contrary, the benefit that Plaintiff's Complaint raises is an alleged unjust benefit resulting from a transfer between Pet Life and SPCP that Plaintiff lacks any standing to pursue. Furthermore, as set forth above, adequate consideration was exchanged in connection with Pet Life's release of SPCP. Therefore, there is no element of "unconscionability" as is required to support an unjust enrichment claim.

00649426.DOC

4.    **Count IV of Plaintiff's Complaint for Breach of Contract Should be Dismissed**

      a)      **Plaintiff is not a third party beneficiary to any relevant contract**

"[A]n action on a contract cannot be maintained against a person who is not a party to the contract unless the plaintiff is a third party beneficiary of the contract or the suit is for product liability or breach of warranty." *State Public School Bldg. Auth. v. Noble C. Quandel Co.*, 585 A.2d 1136, 1140 (Pa.Commw.Ct. 1991); *Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa.Super.Ct. 1997) (person not a party to contract cannot be held liable for breach by party to contract); *see also Crossgates Realty v. Moore*, 420 A.2d 1125, 1128 (Pa.Super.Ct. 1980) (failure of performance by one of contracting parties does not give rise to right of restitution against third party).

Pennsylvania law is clear that a party becomes a third party beneficiary *only* where both parties to the contract express an intention to benefit the third party in the contract itself. *Scarpitti v. Weborg*, 609 A.2d 147, 150-151 (Pa. 1992). Moreover, unless otherwise agreed between a promisor and promisee to a contract, a third party can only be an intended beneficiary of a promise in the contract if recognition of a right to performance in the beneficiary is appropriate to effectuate the parties' intentions and either 1) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or 2) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. *Id.*

Plaintiff's Complaint contains the sole allegation that Gaines and Plaintiff "were intended third-party beneficiaries of the payment obligations of [SPCP] under the Transfer Agreement." Complaint ¶56. To sustain such claim, Plaintiff must establish: (1) that *both* Pet Life and SPCP intended Plaintiff to be a third party beneficiary thereto; and (2) the intention is affirmatively included in the Transfer Agreement. Plaintiff's Complaint and the operative contract establish neither.

- 19 -

*First*, there is no allegation that Pet Life and/or SPCP intended to confer any benefits *upon Plaintiff* when they executed the Transfer Agreement (Ex. 3 hereto), to which Plaintiff was not a party. Absent any such allegation or similar allegations, Plaintiff's "third party beneficiary" claim in Count IV cannot withstand summary judgment. *Second*, the express language of the Transfer Agreement directly defeats Plaintiff's claim. The Transfer Agreement neither alludes to, nor identifies Plaintiff in any manner. *See* Ex, 3. To the contrary, there is no obligation contained in the agreement to any third party other than Gaines. Even assuming that Pet Life and SPCP intended Plaintiff to be a third party beneficiary, the failure to identify Plaintiff as a third party beneficiary is fatal to Plaintiff's claim of "third party beneficiary" status.

*Third*, the Transfer Agreement contains an integration clause, which confirms that the Transfer Agreement is the entire agreement between the parties. *See* Ex. 3, ¶17. Accordingly, there was and can be no intent to include Plaintiff as a beneficiary as the parties fully set forth their agreement in its written form. *Fourth*, the Transfer Agreement also expressly contains a "confidentiality" provision in paragraph 10. *See* Ex. 3, ¶10. Such provision likewise defeats any claim that Plaintiff knew of the Transfer Agreement and/or that SPCP and Pet Life in some way intended to bestow some benefit upon Plaintiff by entering into it. Accordingly, for these reasons, there is no genuine issue of material fact that Plaintiff was not and is not a "third party beneficiary" to the Transfer Agreement.

### b)    SPCP is not a successor of Pet Life

Pennsylvania law is clear that a "successor" company is not responsible for its predecessor's liabilities unless one of the following conditions is established: (1) the successor company expressly or impliedly agreed to assume the obligations; (2) the transaction was a consolidation or merger; (3) the successor company merely was a continuation of the selling corporation; (4) the transaction was a

fraudulent attempt to escape liability; or (5) the transfer lacked adequate consideration and no provisions were made for creditors of the predecessor. *Bird Hill Farms v. U.S. Cargo & Courier*, 845 A.2d 900, 905 (Pa.Super.Ct. 2004).

Plaintiff's Complaint raises the specter of "successor" liability in an ill-fated attempt to establish liability against SPCP for Pet Life's obligations. The terms of the relevant documents and agreements, however, belie Plaintiff's argument. As an initial matter, there is no assumption by SPCP of liability for Pet Life's obligations under the Royalty Agreement [or Settlement Agreement]. Nor does Plaintiff's Complaint plead the existence of any such express or implied assumption. To the contrary, Plaintiff's Complaint concedes that under Article 4.4 of the Royalty Agreement, neither Pet Life nor Plaintiff were released from any of their obligations or liabilities even if they assigned them. Complaint ¶18. As such, any transfer of obligations by Plaintiff is subject to the terms of the Royalty Agreement and no express or implied successor relationship can exist between Pet Life and SPCP.

Furthermore, it is undisputed that on September 1, 2001 and as between Pet Life and SPCP, SPCP was responsible for Pet Life's payments to Gaines pursuant to the Transfer Agreement. However, SPCP's obligation terminated on May 2, 2002 upon execution of the Notification Agreement. Such agreement expressly provides that, in consideration of SPCP's payment of $362,112.13 to LaSalle for obligations due by Pet Life to LaSalle:

> Pet Life acknowledges that [SPCP] is not obligated to make any further payment to [Gaines] pursuant to the [Royalty Agreement] nor any amounts due to [Whitecap] pursuant to [the Marketing Agreement] . . ..

Ex. 5, ¶5. Plaintiff acknowledges this release in its Complaint. *See* Complaint ¶35. Therefore, upon execution of this agreement, Pet Life became the only other entity -- besides Plaintiff -- obligated to make any Royalty Payments pursuant to any agreement. For these reasons, Count IV also must fail to the extent that it is based upon a purported "successor" status between SPCP and Pet Life.

- 21 -

**c)    SPCP is not an alter ego of Pet Life**

Pennsylvania law is well-settled that under the alter ego theory, piercing the corporate veil applies when two or more corporations share common ownership and are, in reality, operating as a corporate combine. *Advanced Tel. Sys. v. Com-Net Professional Mobile Radio*, 2004 Pa.Super. 100, n.9 (Pa.Super.Ct. 2004). This theory is applicable when the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable. *Id.* In order to impose some type of liability upon SPCP for Pet Life's obligations, Plaintiff claims that SPCP is the "alter ego" of Pet Life in Count IV. There are simply no facts supporting the theory that SPCP is the alter ego of Pet Life or vice versa. Moreover, even if SPCP was the "alter ego" of Pet Life, then the Trustee in the Pet Life Bankruptcy Case is charged with bringing the type of action that Plaintiff has asserted in Count IV. Therefore, Count IV must be dismissed to the extent that it is based on some purported "alter ego" theory.

**d)    SPCP has not breached any obligation pursuant to the Royalty Agreement**

SPCP is not a party to the Royalty Agreement. This is undisputed. Accordingly, and for all of the reasons set forth above, SPCP had no obligations under and/or with respect to the Royalty Agreement (or the Settlement Agreement for that matter) and cannot be in breach thereof. For this reason alone, Count IV cannot survive summary judgment.

IV.    **CONCLUSION**

For all of the reasons set forth herein, this Court should grant summary judgment in favor of Defendant and against Plaintiff on all of Plaintiff's claims in this action.

Dated:  September 26, 2005                                  Respectfully submitted,


                                            By:  /s/ Dave White, Esquire
                                                 David E. White
                                                 THORP REED & ARMSTRONG, LLP
                                                 Pa. I.D. No. 59659
                                                 One Oxford Centre
                                                 301 Grant Street, 14th Floor
                                                 Pittsburgh, PA 15219
                                                 (412) 394-2343

                                                 Attorneys for Defendant,
                                                 Sergeant's Pet Care Products, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of its Motion for Summary Judgment Pursuant to Rule 56 of the *Federal Rules of Civil Procedure* has been served upon counsel of record this 26th day of September, 2005 by U.S. Mail, first class, postage prepaid, as follows:

Richard A. Lanzillo, Esq.
Neal Devlin, Esquire
Knox McLaughlin Gornall & Sennett, P.C.
120 West Tenth Street
Erie, PA 16501-1461

/s/ David White, Esquire
David E. White

00649426.DOC