## SETTLEMENT AND COOPERATION AGREEMENT

This Settlement and Cooperation Agreement ("Agreement") is entered into this 3rd day of May, 2002, by and among Pet Life Foods, Inc., an Illinois corporation, ("Pet Life"), Sergeant's Pet Care Products, Inc., a Nevada Corporation ("Sergeant's"), Alan D. Brown individually ("Brown"), and LaSalle Business Credit, Inc., a Delaware corporation ("LaSalle").

### RECITALS

A.  Pursuant to that certain Loan and Security Agreement dated as of June 21, 1999 between Pet Life and LaSalle (as amended and modified from time to time, the "Loan Agreement"), and certain other documents, instruments and agreements executed pursuant thereto or in connection therewith (collectively, the "Related Agreements" and together with the Loan Agreement, the "Lender Loan Documents"), LaSalle has made loans to, and made other financial accommodations to or for the benefit or account of, Pet Life (all such loans and other financial accommodations being herein referred to collectively as the "Loans"). The Loans and all other Liabilities (as defined in the Loan Agreement) of Pet Life to LaSalle, howsoever created, arising or evidenced (collectively, the "Obligations"), are secured by substantially all of Pet Life's assets.

B.  As a result of continuing defaults in respect of the Obligations and other liabilities under the Loan Agreement, LaSalle is exercising its right under Sections 9-610 et seq. of the applicable Uniform Commercial Code (the "UCC"), other applicable law and Lender Loan Documents by selling and transferring to World Pet, LLC ("Buyer") in a private sale all of Pet Life's right, title and interest in and to the Subject Assets as defined in, and subject to the provisions of, that certain Foreclosure Agreement of even date herewith (the "Foreclosure Agreement" and such sale, the "Foreclosure Sale"). Pet Life has consented to the Foreclosure Sale and the other transactions contemplated therein pursuant to a Reaffirmation, Release, Consent and Acknowledgment of even date herewith by and between LaSalle and Pet Life (the "Reaffirmation Agreement").

C.  Pet Life and Sergeant's have entered into a Notification and Cancellation Agreement (the "Notification Agreement") pursuant to which Sergeant's has agreed to pay $362,112.13 of disputed invoices to LaSalle and Pet Life and Sergeant's have agreed that Sergeant's shall be released from any future liability, with respect to the royalty payments due under the Trademark License and Transfer Agreement (the "License Agreement") dated September 1, 2001, and Pet Life and Sergeant's further agree that Sergeant's shall be deemed to have offset Sergeant's liability under the License Agreement, if any, against Pet Life's current undisputed obligations to Sergeant's in the amount of $447,446.38.

D.  Concurrently herewith, Pet Life and the Buyer are entering into an Agreement of even date herewith (the "Co-Pack Agreement") pursuant to which Buyer will provide inventory to Pet Life and pay a fee to Pet Life in order to enable

1

CH_DOCS\397300.2[W2000]

EXHIBIT

S 000075

Pet Life to produce products for Buyer. Sergeant's will enter into agreement with Buyer pursuant to which Sergeant's shall purchase at specified prices certain finished goods produced by Pet Life. In addition, Pet Life, LaSalle and the Buyer are concurrently entering into an Access, Indemnity and Non-Disturbance Agreement of even date herewith (the "Non-Disturbance Agreement") relating to that certain real property commonly known as M40, Hamilton, Michigan 49419 and 144th Avenue, Holland, Michigan 49533 (collectively, the "Real Property") pursuant to which, and subject to the terms and provisions of which, the Buyer will have access to the Real Property for a specified period in order to remove the Subject Assets. The Foreclosure Agreement, the Reaffirmation Agreement, the Notification Agreement, the Co-Pack Agreement, the Supply Agreement, the Non-Disturbance Agreement and all other agreements, instruments and documents executed in connection with any of the foregoing shall be collectively referred to as the "Transaction Documents," and all of the transactions contemplated by the Transaction Documents shall be collectively referred to as the "Transactions."

E. Brown is the controlling officer of Pet Life.

F. Subject to the terms and conditions set forth herein, Brown's and Sergeant's consent to the parties' execution, delivery and performance of the Transaction Documents and the consummation of the Transactions and agree to take certain specified actions and, more generally, to cooperate with LaSalle and the Buyer in order to facilitate the Transactions.

G. LaSalle has certain claims against Sergeant's, including, without limitation, claims under that certain Trademark and License Mortgage dated as of September 1, 2001 (the "Trademark Mortgage") between LaSalle and Sergeant's and that certain Inventory Disposition Agreement dated as of September 25, 2001 (the "Inventory Disposition Agreement") and subject to the terms and conditions set forth herein, is willing to release those claims.

H. Pet Life and Sergeant's have entered into a number of agreements including, but not limited to, the Trademark License and Transfer Agreement (the "Trademark Agreement"), numerous purchase orders and cost sharing agreements as to slotting arrangements. Pet Life has requested that Sergeant's pay all current invoices without deduction for defective products, and both parties desire to terminate their existing contractual relationships.

NOW THEREFORE, in consideration of the premises and agreements set forth herein, the parties agree as follows:

1. Each of Sergeant's, Pet Life and Brown hereby (a) consents to the execution, delivery and performance of the Transaction Documents by the parties thereto and to the consummation of the Transactions, (b) agrees to execute and deliver and comply with all of its obligations under each the Transaction Documents to which is a party and to use its best efforts to cause Pet Life to execute and deliver and comply with Pet Life's

2

obligations under each of the Transaction Documents to which Pet Life is a party, (c) agrees not to take any action, and to use its best efforts to cause Pet Life not to take any action, which would, directly or indirectly, disturb, restrict or limit the Buyer's exercise of any rights under any of the Transaction Documents, including, without limitation, the Buyer's right of access to the Real Property pursuant to the Non-Disturbance Agreement, (d) agrees not to cause, or encourage any other person or entity to cause, Pet Life to be the subject of any bankruptcy case or other insolvency proceeding, without the prior written consent of the Buyer, (e) in the event Pet Life becomes the subject of a bankruptcy case or other insolvency proceeding, agrees to use its best efforts to cause Pet Life (i) to assume, pursuant to the applicable provisions of the Bankruptcy Code, 11. U.S.C. 101 et seq., any Transaction Document to which Pet Life is a party (including, without limitation, the Co-Pack Agreement, the Supply Agreement and the Non-Disturbance Agreement) and to comply with Pet Life's obligations thereunder and (ii) to provide the Buyer with access to the Real Property to the extent provided in the Non-Disturbance Agreement and the Foreclosure Agreement, (f) agrees to cooperate, and to use its best efforts to cause Pet Life to cooperate, with LaSalle in effectuating any sale or other disposition of any other assets of Pet Life (i.e., any assets other than the Subject Assets) on terms and conditions acceptable to LaSalle, (g) agrees to assist LaSalle or Buyer in any manner reasonably requested by LaSalle or Buyer in connection with their respective efforts to collect any of the accounts receivable of Pet Life, and (h) to execute, and to use its best efforts to cause Pet Life to execute, such agreements, instruments and documents and to take such action, and to use its best efforts to cause Pet Life to take such action, as LaSalle or the Buyer may reasonably request from time to time in order to further evidence or effectuate the Transactions.

2. In consideration of Pet Life's execution of the Notification Agreement, Sergeant's shall wire transfer on May 3, 2002, to LaSalle for credit to Pet Life the amount of $362,112.13 (the "**Sergeant's Payment**"), which represents the current outstanding balance owing by Sergeant's to Pet Life on all invoices for products produced by Pet Life and shipped to Sergeant's for the account of Sergeant's (including, without limitation, Pet Life 10-ounce sirloin surp fill), without deduction, which indebtedness is subject to LaSalle's first priority lien. If the products shipped on May 2, 2002, to Sergeant's are defective or are not usable for the purpose for which they were intended, as determined by Michael Helsebos, LaSalle shall refund to Pet Life the amounts attributable to such product.

3. Sergeant's hereby cancels all purchase orders for product not shipped as of the date hereof, and Pet Life acknowledges such orders have been cancelled, and LaSalle consents to such cancellation. LaSalle agrees that effective upon its receipt of the Sergeant's Payment, the no-offset letter is of no further force or effect.

4. (a) LaSalle hereby releases any and all claims it may have against (i) Pet Life Consolidation, Inc. or its officers, directors, employees, shareholders, attorneys or representatives, (ii) Sergeant's or its officers, directors, employees, shareholders, attorneys or representatives and (iii) the officers, directors, employees, shareholders, attorneys or representatives of Pet Life (collectively, the "Affiliate Releasees") arising on

3

or before the date hereof out of or in connection with the Loans or the actions or omissions of any of the Affiliate Releasees to the Loans or the actions or omissions of Pet Life; provided, however, that nothing herein shall release (w) any claims arising under this Agreement or any other Transaction Documents, (x) any claims against Pet Life (including, without limitation, any claims in respect of the Loans, the Lender Loan Documents or the acts or omissions of Pet Life), (y) any claims against any of the Affiliate Releasees to the extent based on actions, omissions or other circumstances as to which LaSalle has no actual knowledge on the date hereof, or (z) any claims under the Trademark Mortgage or the Inventory Disposition Agreement (which shall be released only to the extent provided in Paragraph 9 hereof); provided, further, that the foregoing release shall not be enforceable by any Affiliate Releasee unless and until such Affiliate Releasee executes and delivers a release in favor of LaSalle and its officers, directors, employees, shareholders, attorneys and representatives in form and substance identical to the release set forth in subparagraph (b) below.

(b) Each of Sergeant's and Brown, on behalf of itself and its or his successors, assigns, heirs, executors and legal representatives, hereby releases any and all any and all claims it may have against any or all of LaSalle and its officers, directors, employees, shareholders, attorneys or representatives (collectively, the "LaSalle Releasees") arising on or before the date hereof out of or in connection with the Loans or the actions or omissions of any of the LaSalle Releasees with respect to the Loans, the Lender Loan Documents or the transactions contemplated thereby or the relationship or dealings between Pet Life and LaSalle; provided, however, that nothing herein shall release (w) any claims arising under this Agreement or any other Transaction Documents, (x) any claims against Pet Life, and (y) any claims against any of the LaSalle Releasees to the extent based on actions, omissions or other circumstances as to which Sergeant's or Brown, as applicable, has no actual knowledge on the date hereof.

5. LaSalle acknowledges it has no interest in any assets of Pet Life Consolidation, Inc., including, without limitation, any proceeds from any litigation between Pet Life Consolidation, Inc. and the Sellers of the Pet Life stock, and all of the parties hereto acknowledge that LaSalle has no responsibility for any of the expenses of or other liabilities relating to such litigation.

6. LaSalle represents to all parties that the total value of its collateral is more than $1,000,000 less than the outstanding amount of its Loans and that it will attempt to conduct the Foreclosure Sale and any future foreclosure sales in accordance with applicable law.

7. Pet Life's, Sergeant's and Brown's agreement to cooperate pursuant to Paragraph 1(f) hereof with respect to future foreclosure sales (other than the Foreclosure Sale) is contingent upon the accuracy of LaSalle's representation that it is undersecured and the legality of the applicable future foreclosure sales. Pet Life and Brown believe that the value of the Pet Life assets is less than the outstanding amount of the Obligations owing to LaSalle by an amount in excess of $1,000,000 and that the Foreclosure Sale is being conducted in accordance with applicable law. Notwithstanding anything to the

4

contrary herein, Pet Life's, Sergeant's and Brown's agreement to cooperate pursuant to Paragraph 1(f) hereof with respect to future foreclosure sales shall not obligate any of them to take any action that would violate (i) any order of any court or (ii) any applicable federal, state or local law, but in the case of clause (ii), only if such party has obtained, and delivered to LaSalle, a written legal opinion from an independent law firm of recognized regional or national reputation that such action would violate applicable federal, state or local law.

8. Neither Pet Life, Sergeant's or Brown shall be required to spend money to fulfill their obligation to cooperate unless LaSalle has agreed to fund such amounts in advance.

9. The parties agree that to the extent that during the period from the date hereof through the earlier of (such earlier date, the "Release Date") (x) the date on which Buyer has removed substantially all of the Subject Assets from the Real Property and (y) the expiration or termination (after giving effect to any applicable option periods) of the Non-Disturbance Agreement, no breach by either Brown or Sergeant's in any material respect of any of their respective obligations under Paragraph 1 hereof has occurred and remained uncured as of the fifth business day after the receipt by Brown or Sergeant's, as applicable, of a written notice of default from LaSalle, then LaSalle shall be deemed to have released, as of the Release Date, any and all claims against Sergeant's arising on or before the date hereof, including, without limitation, all claims under the Trademark Mortgage and the Inventory Disposition Agreement (but excluding any claims against Sergeant's under this Agreement, and on the third business day after LaSalle's receipt of a written request from Sergeant's, LaSalle shall execute and deliver to Sergeant's a release of the Trademark Mortgage. LaSalle agrees that as of the date hereof, the maximum amount that LaSalle could collect under the Trademark Mortgage is $200,000.

10. All notices, demands or other communications of any type (herein collectively referred to as "Notices") whether required by this Agreement or in any way related to the transaction contracted for herein shall be in writing and delivered to the person to whom the Notice is directed, either (i) in person, (ii) by United States Mail, postage prepaid, registered or certified mail with return receipt requested, (iii) delivered by a commercial delivery service, or (iv) delivered by a commercial delivery service, or (v) sent by telex, telecopy or facsimile transmission (provided it is confirmed by commercial delivery service or by mail in the manner provided herein). Notices delivered by mail shall be deemed given and received upon deposit in a post office or other depository under the care or custody of the United States Postal Service, addressed properly, with proper postage affixed. All notices shall be addressed as follows:

If to Pet Life Foods, Inc.    Alan Brown
or Alan Brown                 1601 Elm Street, Suite 300
                              Dallas, TX 75201

If to Sergeants:              Mr. Bob Scharf
                              President

Sergeant's Pet Care Products
14748 West Center Road, Suite 303
Omaha, NE 68144-2029
facsimile: 402-938-7099

If to LaSalle:   LaSalle Business Credit, Inc.
135 South LaSalle Street, Suite 425
Chicago, Illinois 60603-4105
Attn: Herbert "Bert" Kidd II and William Stapel
facsimile: 312-904-7418

Either party hereto may change the address for Notice specified above by giving the other party two (2) days' advance written notice of such change of address. Notices given otherwise than by mail shall be deemed given and received upon actual receipt thereof.

11. EXCEPT WHERE FEDERAL LAW IS APPLICABLE OR PREEMPTS STATE LAWS, THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF ILLINOIS. THIS AGREEMENT IS PERFORMABLE IN COOK COUNTY, ILLINOIS, AND VENUE FOR ANY LEGAL ACTION ARISING OUT OF THIS AGREEMENT SHALL BE EXCLUSIVELY IN COOK COUNTY, ILLINOIS.

12. This Agreement embodies the entire Agreement between the parties and supersedes all prior agreements and understandings, if any, relating to the transactions described herein, and may be amended or supplemented only by an instrument in writing executed by the party against whom enforcement is sought. THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL

13. **Parties Bound.** Subject to the limitations on assignment contained herein, this Agreement shall be binding upon and inure to the benefit of parties hereto and their respective successors and assigns.

14. **Further Acts.** In addition to the acts recited in this Agreement to be performed by the parties hereto, each of the parties hereto further agrees to perform or cause to be performed, on or after the date hereof, any and all such further acts as may be reasonably necessary to consummate the transactions contemplated hereby.

15. **Severability.** In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid illegal or unenforceable in any

respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

16. <u>Assignment</u>. This Agreement may not be assigned by any party hereto without the written consent of the other parties.

17. <u>Headings</u>. Headings used in this Agreement are used for reference purposes only and do not constitute substantive material to be considered in construing the terms of this Agreement.

18. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement. Any party hereto may execute and deliver a counterpart of this Agreement by delivering by facsimile transmission a signature page of this Agreement signed by such party, and any such facsimile signature shall be treated in all respects as having the same effect as an original signature. Any party delivering by facsimile transmission a counterpart executed by it shall promptly thereafter also deliver a manually signed counterpart of this Agreement.

**\Remainder of Page Intentionally Blank\**

IN WITNESS WHEREOF, all parties have executed this Agreement to be effective for all purposes as of the date hereof.

Sergeant's Pet Care Products, Inc.

By: _____
Robert Scharf
President


Pet Life Foods, Inc.

By: _____
Alan Brown
Chairman of the Board


LaSalle Business Credit, Inc.

By: *William A. Stapel* (signature)
Name: William A. Stapel
Title: E.V.P.


Alan D. Brown, individually

By: _____

8