# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

In Re:

PET LIFE FOODS, INC.

                             Chapter 7
                             Case No. SG 02-07387
                             Hon. Jo Ann C. Stevenson

               Debtor.

_____//

ELIZABETH CHALMERS, TRUSTEE,

               Plaintiff,

-vs.-

                             Adv. No.:

SERGEANT'S PET CARE PRODUCTS, INC.,

               Defendant.

_____//

## COMPLAINT

     **NOW COMES** Elizabeth Chalmers (the "Plaintiff"), the Chapter 7 Trustee in this case,

by and through her attorneys, Varnum Riddering Schmidt & Howlett, LLP, and for her

Complaint, says as follows:

### JURISDICTION AND VENUE

     1.     This adversary proceeding relates to and arises under the case of *In re: Pet Life*

*Foods, Inc.,* Case Number SG 02-07387 (the "Chapter 7 proceeding"). The Chapter 7

proceeding was commenced by an involuntary petition filed under Chapter 7 of the United States

Bankruptcy Code (the "Code"), in the United States Bankruptcy Court for the Western District of

Michigan, on June 28, 2002.

**EXHIBIT**

**7**

2.      This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1334 and 157, as well as the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Western District of Michigan.

3.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The instant matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (F), (H) and (O). The statutory predicates for the relief sought herein are §§ 502, 544, 547, 548 and 550 of the Code.

## PARTIES

4.      The Plaintiff was appointed on July 23, 2002 and the Order for Relief was entered on that date.   The Plaintiff is qualified and acting as the official trustee in the Chapter 7 proceeding pursuant to § 702(d) of the Code.

5.      Defendant is a Nevada corporation whose registered agent is located at 1601 Elm Street, Dallas, Texas 75201.  The United States Bankruptcy Court has personal jurisdiction over the Defendant.  Further, the Defendant is subject to nationwide service of process, pursuant to Rules 7004(f) and 7004(d) of the Federal Rules of Bankruptcy Procedure.

## GENERAL ALLEGATIONS

6.      The Defendant is closely affiliated with Pet life Foods, Inc.  It is, in essence, a "sister" company of the Debtor—operating in the same industry, and intertwined with nearly an identical makeup of shareholders, officers and directors, and direct ties to group of investors with a Texas-based investment company, Sowell & Co. ("Sowell").

7.      In 1999, Sowell formed Pet Life Consolidation, Inc. ("Consolidation") for the sole purpose of acquiring and holding the stock of the Debtor.  The payment of the purchase price consisted of $10,000,000 cash, and a note to the sellers by Consolidation for $1,288,549.  The stock purchase was financed by loans in the aggregate principal amount of $12,625,000 by

2

LaSalle Business Credit, Inc. ("LaSalle").    Additionally, the Debtor incurred approximately $1,125,000 in direct acquisition costs.

8.    To secure the loan, the assets of Debtor were pledged as the collateral. Thus, at the close of the transaction in June of 1999, Consolidation held all of the stock of the Debtor, the Debtor's prior owners had received cash in exchange for their stock, and LaSalle held a security interest on the assets of Debtor.    This type of credit facility, widespread in the 1980's, is commonly known as a leveraged buyout ("LBO").    In this instance, the LBO instantaneously transformed the Debtor from a relatively debt-free corporation to one that was massively leveraged.

9.    At the time of the acquisition, the Debtor was a private label manufacturer of pet treats for third parties.    Primarily, the Debtor was a co-packer in the pet treat industry, manufacturing large quantities of pet treats pursuant to licenses granted from its customers. While Debtor owned some recipes outright, it was not a branded portfolio company.    The Debtor's lifeblood was producing pet food for third parties under various licensing agreements. Up to that time of the stock sale, the Debtor enjoyed good business growth, healthy financials, and was burdened with very little debt.    The Debtor was a financially healthy company with a favorable outlook in the near future.

10.    Upon assuming control of Debtor, Sowell and Consolidated appointed a new management team and a new board of directors.    This management team developed a new business plan for Pet Life.    Under the new business plan, Pet Life was to devote less of its business to co-packing for private label ownership, and instead develop its own brands and market presence as a pet food retailer.

11.    Consistent with Pet Life's new business model, Pet Life entered into an agreement in November 1999 for the purchase of certain formulas, recipes, and assets of an unrelated, branded pet food manufacturer, Gaines Pet Food Corporation ("Gaines").    Pursuant to this

3

agreement, Gaines sold its rights in a number of its pet food labels to the Debtor and a third-party for $2,550,000. The Debtor contributed $1,350,000 towards the purchase price.

12.    The transaction closed in late 1999, and Pet Life began extensive marketing and manufacturing of its own pet food labels by early 2000. Sowell and Consolidation anticipated that the acquisition would increase sales by an estimated $8,000,000 for a consideration of approximately $1,350,000, and future royalty payments of 2% plus transaction costs.

13.    In spite of Sowell's and Consolidation's plans, however, it became evident to Sowell and Consolidation, shortly after the transaction with Gaines, that the Debtor was losing money.

14.    By May of 2000, the Debtor was in default of its loan obligations to LaSalle.

15.    The Debtor continued to experience financial problems throughout the summer months of 2000. With the writing on the wall, on September 1, 2000 the principals of Sowell— several of whom are also shareholders of Consolidated, and officer and directors of the Debtor— acquired another pet foods company, Defendant, Sergeant's Pet Care Products, Inc., giving them the opportunity to transfer significant assets of the Debtor to a financially healthy company.

16.    In fact, in September of 2001, the Debtor transferred to Defendant all of its right, title and interest in certain trademarks, including all of the trademarks that the Debtor had earlier acquired from Gaines. In exchange for the transfer of trademarks, Defendant paid consideration of at most $600,000 for the assets—for which the Debtor had paid $1,350,000. Defendant also assumed liabilities of the Debtor in the form of royalty payments to third-parties, however, upon information and belief, Defendant never fulfilled these obligations.

17.    In addition to the less-than-arm's-length transfer of assets, the Debtor continued to produce and package for the Defendant the same pet products for the brands it had sold to the Defendant. This was done pursuant to an unwritten agreement under which the Debtor charged the Defendant prices approximately 33% below market rates.

4

## COUNT I
## (AVOIDANCE AND PRESERVATION OF PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b))

18.    Plaintiff hereby realleges and incorporates by reference the allegations contained in ¶ 1 through 17 of this Complaint as though fully set forth herein.

19.    The Defendant is an affiliate of the Debtor and therefore an insider pursuant to 11 U.S.C. § 101(31).

20.    Between ninety days and one year prior to the Petition Date, the Debtor made the following transfers of an interest of the Debtor in property to or for the benefit of the Defendant, totaling $14,483.70.

| Check No. | Date Clr | Amount Paid |
|---|---|---|
| 6081 | 10/24/01 | $5,000.00 |
| 6531 | 12/27/01 | $9,483.70 |

21.    The Debtor's Schedules and Statement of Financial Affairs—prepared under the direction of Attorney Stephen Smathers, shareholder of the Debtor's holding company, Pet Life Consolidation, Inc., and, upon information and belief, an attorney and shareholder of the Defendant—failed to disclose these transfers.

22.    Upon information and belief, each of the transfers was made for or on account of an antecedent debt owed by the Debtor to the Defendant before each of the transfers was made.

23.    Each of the transfers was made while the Debtor was insolvent.

24.    The transfers enabled the Defendant to receive more than the Defendant would have received if the transfers had not been made, and the Defendant received payment of such debt owed by the Debtor to the extent provided by the applicable provisions of Title 11 of the United States Code.

25.    The Plaintiff is entitled to avoid preferential transfers pursuant to 11 U.S.C. § 547(b) for the preservation and benefit of the estate pursuant to 11 U.S.C. § 551.

**WHEREFORE**, your Plaintiff prays that this Honorable Court, pursuant to 11 U.S.C. §§ 547(b) & 550:

    (A)    Enter an order providing for the avoidance of the aforementioned transfers;

    (B)    Enter a judgment in favor of the Plaintiff and against the Defendant in the amount of $14,483.70, together with costs and attorney's fees incurred by the Plaintiff in connection with this action; and

    (C)    Order such other and further relief as the Court deems just and equitable.

## COUNT II
### (AVOIDANCE AND PRESERVATION OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B))

26.    Plaintiff hereby realleges and incorporates by reference the allegations contained in ¶1 through 25 of this Complaint as though fully set forth herein.

27.    In addition to the transfers listed in Count I, the Debtor made other transfers to Defendant, including (1) the sale of product and services from the Debtor at below cost (approximately 33% discount from market rates) pursuant to an unwritten "cost-plus" agreement. and (2) the sale to Sergeants of certain trademarks of the Debtor (including trademarks acquired in the Gaines transaction). By conservative estimates, these transactions have resulted in transfers exceeding $900,000.

28.    The Debtor received less than a reasonably equivalent value in exchange for such transfers.

29.    The Debtor was insolvent on the date of the transfers, or become insolvent as a result of the transfers, and

    (a)    was engaged in business or a transaction for which property left with the Debtor was an unreasonably small capital, or

    (b)    intended to incur, or believed the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

30.     The Defendants did not take such transfers for value and in good faith within the meaning of 11 U.S.C. § 548(c), and did not give value to the Debtor in exchange for such transfers.

**WHEREFORE,** your Plaintiff prays for a judgment against the Defendants, pursuant to 11 U.S.C. §§ 548(a)(1)(B) & 550 for the sum of:

    (a)    all payments received by the Defendants from the Debtor within the one year prior to the Petition Date; and

    (b)    interest, costs and such other amounts as this Court finds just and equitable.

### COUNT III
### (AVOIDANCE AND PRESERVATION OF FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 544(b) AND UFTA)

31.     Plaintiff hereby realleges and incorporates by reference the allegations contained in ¶ 1 through 30 of this Complaint as though fully set forth herein.

32.     11 U.S.C. § 544(b) allows the bankruptcy trustee to use applicable state law to avoid fraudulent transfers.

33.     The Debtor's transfers to the Defendant constitute fraudulent transfers pursuant to M.C.L. § 566.31 *et seq.*

34.     The transfers took place while the Debtor was insolvent.

35.     The Debtor made such transfers without receiving a reasonably equivalent value in exchange for the transfers or obligations, and the Debtor did either of the following:

    (a)    Was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

    (b)    Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

36.     The Defendant did not take such transfers for value and in good faith or for reasonably equivalent value, as set forth in M.C.L. § 566.38.

7

**WHEREFORE,** your Plaintiff prays for a judgment against the Defendant, pursuant to 11 U.S.C. §§ 544(b) & 550 for the sum of:

     (a)    all payments received by the Defendant from the Debtor; and

     (b)    interest, costs and such other amounts as this Court finds just and equitable.

## COUNT IV
### (RECOVERY OF AVOIDED TRANSFERS PURSUANT TO 11 U.S.C. § 550)

37.    Plaintiff hereby realleges and incorporates by reference the allegations contained in ¶ 1 through 37 of this Complaint as though fully set forth herein.

38.    Upon avoidance of the transfers as preferential transfers or fraudulent transfers, the Plaintiff is entitled to recover the value of the transfers from the Defendant as an initial transferee pursuant to 11 U.S.C. § 550.

**WHEREFORE,** your Plaintiff prays for a Judgment against the Defendant, pursuant to 11 U.S.C. § 550 for the recovery of the value of all the transfers avoided by this Court.

VARNUM, RIDDERING, SCHMIDT & HOWLETT LLP
Counsel for Trustee

Dated: July 22, 2004        By: _____
                                 Paul M. Morgan (P58903)
                                 **BUSINESS ADDRESS:**
                                 251 North Rose Street, 4th Floor
                                 Kalamazoo, MI 49007-3823
                                 (269) 382-2300

1013278_1.DOC

8

B 104
(Rev. 2/92)

**ADVERSARY PROCEEDING COVER SHEET**
(Instructions on Reverse)

| | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFFS**

ELIZABETH C. CHALMERS, TRUSTEE FOR PET LIFE
FOODS, INC.

**DEFENDANTS**

SERGEANT'S PET CARE PRODUCTS, INC.
Registered Agent:  CT Corporation System
1601 Elm Street
Dallas, TX  75201-7277

**ATTORNEYS (Firm Name, Address, and Telephone No.)**
Varnum Riddering Schmidt & Howlett LLP
251 N. Rose Street, 4th Floor
Kalamazoo, MI  49007
269/382-2300

**ATTORNEYS (If Known)**

**PARTY (Check one box only)**  ☐ 1 U.S. PLAINTIFF    ☐ 2 U.S. DEFENDANT    ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)**

Complaint to recover preference payments and fraudulent transfers.  Jurisdiction: 28 U.S.C. §§ 1334 and 157; Venue:  28
U.S.C. §§ 1408 and 1409; Based on:  28 U.S.C. §§ 157(b)(2)(A), (B), (F), (H) and (O), and §§ 502, 544, 547, 548, and
550.

**NATURE OF SUIT**
(Check the one most appropriate box only.)

☒ 454   To Recover Money or Property
☐ 435   To Determine Validity, Priority, or
         Extent of a Lien or Other Interest in
         Property
☐ 458   To obtain approval for the sale of both
         the interest of the estate and of a co-
         owner in property
☐ 424   To object or to revoke a discharge
         11 U.S.C. § 727

☐ 455   To revoke an order of confirmation
         of a Chap. 11, Chap. 12, or Chap. 13 Plan
☐ 426   To determine the dischargeability
         of a debt 11 U.S.C. § 523
☐ 434   To obtain an injunction or other
         equitable relief
☐ 457   To subordinate any allowed claim
         or interest except where such
         subordination is provided in a plan

☐ 456   To obtain a declaratory
         judgment relating to any of
         foregoing causes of action

☐ 459   To determine a claim or cause of
         action removed to a bankruptcy
         court

☐ 498   Other (specify)

**ORIGIN OF PROCEEDINGS**
(Check one box only.)

☒ 1 Original Proceeding
☐ 2 Removed Proceeding
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another Bankruptcy Court

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

| **DEMAND** | NEAREST THOUSAND | OTHER RELIEF SOUGHT | ☐ JURY DEMAND Check only if demanded in complaint |
|---|---|---|---|
| | | $14,483.70 for known preference transfers, plus unspecified damages | |

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR | BANKRUPTCY CASE NO. |
|---|---|
| Pet Life Foods, Inc. | SG 02-07387 |

| DISTRICT IN WHICH CASE IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| Western | Southern | Jo Ann C. Stevenson |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| | | |

| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |
|---|---|---|
| | | |

**FILING FEE**  (Check one box only.)    ☐ FEE ATTACHED    ☐ FEE NOT REQUIRED    ☒ FEE IS DEFERRED

| DATE | PRINT NAME | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|
| July 22, 2004 | Paul M. Morgan (P58903) | |

1013213_1.DOC