# EXHIBIT "E"

*Steven Scheffer*

## SETTLEMENT AGREEMENT

WHEREAS, DAD'S PRODUCTS COMPANY, INC. ("Dad's) and PET LIFE FOODS, INC. ("Pet Life") purchased from GAINES PET FOODS ("Gaines") certain equipment, trademarks, customer accounts, and goodwill pursuant to a Purchase Agreement dated November 23, 1999 (the "Transaction");

WHEREAS, pursuant to a Supplier and Royalty Agreement dated November 23, 1999, Dad's and Pet Life are obligated to Gaines to pay certain royalty payments (the "Royalty Obligation") for each calendar year commencing on January 1, 2000 and ending December 31, 2004;

WHEREAS, Dad's and Pet Life formed MAPLE LEAF PET CARE, LLC ("Maple Leaf") in order to provide fulfillment and administrative services for certain joint customer accounts purchased by them from Gaines pursuant to the Transaction;

WHEREAS, Dad's and Pet Life also utilize Maple Leaf as the repository for ownership of certain trademarks acquired from Gaines pursuant to the Transaction which are jointly used by Dad's and Pet Life (the "Trademarks"), which Trademarks are listed on Schedule 1 attached hereto and made a part hereof;

WHEREAS, Dad's and Pet Life entered into a Sales and Marketing Agreement dated November 16, 1999 (the "Marketing Agreement") with Whitecap, Inc., Gerald Shulman, and David Kofsky (collectively "Whitecap"), which obligates Whitecap to provide various sales and marketing services to some of the customer accounts acquired by Dad's and Pet Life pursuant to the Transaction;

WHEREAS, Dad's and Pet Life have incurred (and will continue to incur) various expenses in enabling Maple Leaf to provide fulfillment and administrative services required for the operation of Maple Leaf (the "Services"), and such expenses are subject to (and will continue to be) reimbursement by one party to the other (the "Reimbursements"); and

WHEREAS, Dad's and Pet Life desire to provide for the termination of Maple Leaf and intend to clarify the rights and obligations of the parties with respect to operation of the business acquired in the Transaction, payment of the Royalty Obligation, settlement of their obligation to Whitecap, ownership and use of the Trademarks, and Reimbursement for Services.

NOW, THEREFORE, intending to be legally bound hereby, Dad's and Pet Life agree as follows:

1.  <u>Wind-Down and Termination of Maple Leaf</u>.  Maple Leaf shall be terminated and the parties shall use their best efforts to liquidate the assets and/or distribute them in accordance with this agreement no later than December 31, 2001.  To that end, Dad's and Pet Life shall



Δ π EXHIBIT _16_
Deponent _Scharf_
Date _8/10/05_ Rptr. _)))_
WWW.DEPOBOOK.COM

S 000133

immediately implement and execute the liquidation of Maple Leaf's assets and/or distribute them in accordance with this agreement. Following the liquidation, each party shall independently deal with the customers acquired from Gaines with respect to the sale of products by that party to the customers; and each party shall be solely responsible for its own fulfillment and administrative services associated with all such sales. During the wind-down, each party shall cooperate with the other in providing such introductions, information, and other assistance as shall be deemed necessary or desirable by the other party in order to enable it to independently handle its business dealings with the customers following completion of the wind-down.

2.    Reimbursement for Services. Using their best efforts, within ten (10) days, the parties will complete an analysis of all Services rendered by either party associated with Maple Leaf for the period ended June 30, 2001 (the "Analysis"), which will constitute a full settlement of all Reimbursements owed by either party to the other for the period then ended. For the period beginning July 1, 2001 through December 31, 2001, Pet Life will pay Dad's 1.6% of applicable sales in Maple Leaf for administrative support. Other services rendered between the two companies will be at cost as customary in the previous periods. If acceptable to both parties, the Analysis will be initialed by the chief financial officers of Dad's and Pet Life as evidence of their acceptance of the terms contained therein; and settlement of Reimbursements for the period ended June 30, 2001 shall be made simultaneously therewith.

3.    Settlement with Whitecap. Dad's and Pet Life agree that certain activities of Whitecap during the term of the Marketing Agreement may have involved willful misconduct and/or gross negligence by Whitecap; and Dad's and Pet Life acknowledge that such conduct may constitute grounds to terminate the Marketing Agreement for cause and without further obligation to Whitecap. Not later than August 15, 2001, Dad's and Pet Life shall provide Whitecap with written notice of termination, which termination shall be effective ninety (90) days thereafter. Such notice shall include, among other things, notification to Whitecap that, unless directed by Dad's or Pet Life for specific accounts, it should immediately desist from making any further communications with the customers, brokers, agents, suppliers (including packaging suppliers), and trade partners previously handled by Whitecap pursuant to the Marketing Agreement; and Dad's and Pet Life shall require strict performance by Whitecap of the restrictive covenants contained in Paragraph (11) of the Marketing Agreement. To the extent that Dad's and Pet Life are obligated to Whitecap for continuation fees and commission payments subsequent to termination of the Marketing Agreement, such obligations shall be paid by the parties as follows: (i) each party shall separately pay commissions applicable to its separate products, and (ii) continuation fees shall be shared as follows: Dad's - 50% and Pet Life - 50%. To the extent that the parties incur any expenses related to termination of the Marketing Agreement, all associated costs and expenses (to be approved in advance), including reasonable attorney fees, shall be shared equally by Dad's and Pet Life.

4.    Royalty Obligation. Dad's and Pet Life acknowledge that the minimum Royalty Obligation owed to Gaines is $300,000 per year. Dad's and Pet Life agree that the minimum Royalty Obligation for 2001 and thereafter shall be shared as follows: Dad's - 40% and Pet Life - 60%. Customer deductions applicable to the business of Gaines prior to the closing of the

- 2 -

S 000134

Transaction shall continue to be subject to set-off against each party's share of the Royalty Obligation based on a determination whether the customer deduction relates to pet treats or pet foods. In the event of a prepayment, subsequent customer deductions applicable to the business of Gaines prior to the closing of the Transaction shall be borne by Dad's (in the case of a deduction for pet foods) and Pet Life (in the case of a deduction for pet treats).

5.    <u>The Trademarks</u>.  Maple Leaf shall assign and transfer the Trademarks to Dad's and Pet Life as provided on Schedule 1. For a period of twelve (12) months following execution of this Agreement, each party shall have a non-exclusive royalty-free license to utilize the Trademarks of the other party solely to manufacture, distribute, and sell to Customers (as defined in Paragraph 6 hereof) those products which it currently sells to such Customers.

6.    <u>Restrictive Covenant</u>.  Schedule 2 attached hereto and made a part hereof contains a complete list of the customers acquired in the Transaction to whom both Dad's and Pet Life are currently transacting business (the "Customers") and the specific location for that Customer.  In transacting further business with the Customers at the locations specified on Schedule 2, the parties agree to the following:

(a)    For the period commencing on the date of this Agreement and ending on December 31, 2002, Dad's will not, directly or indirectly, manufacture, distribute, or otherwise provide private label soft treats to the Customers.  The parties expressly agree that private label soft treats shall not include "jerky" products or injection molded treats.

(b)    For the period commencing on the date of this Agreement and ending on December 31, 2002, Pet Life will not, directly or indirectly, manufacture, distribute, or otherwise provide private label "Variety Mix" (Kibble type products) to the Customers.

The parties agree that a breach of these covenants by either party will give rise to irreparable harm to the other party; and, in that event, the injured party shall be entitled to injunctive relief as well as recovery of all monetary damages.

7.    <u>Miscellaneous</u>.

(a)    Dad's and Pet Life agree to promptly terminate joint warehousing operations in Canada.  In all events, Dad's shall be entitled to provide notice that it will neither utilize Canadian warehouse facilities nor be responsible for any charges associated therewith for any period subsequent to September 30, 2001.

(b)    This Agreement contains the entire understanding between the parties and supersedes all prior understandings, written or oral, with respect to the subject matter hereof.

(c)    This Agreement shall not be altered, amended, or changed except in writing signed by Dad's and Pet Life.

S 000135

(d)     This Agreement shall be construed, interpreted, and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

(e)     This Agreement shall be binding upon the parties hereto, their successors and assigns.

(f)     Waiver by any party of any breach or default by the other party shall not be deemed to extend to any prior or subsequent breach or default.

WITNESS the due execution hereof as of the 1st day of August, 2001.

DAD'S PRODUCTS COMPANY, INC.

BY: _____
    Richard A. Lang, Jr., President

PET LIFE FOODS, INC.

BY: _____
    Alan D. Brown, Chairman

# 387652

- 4 -

S 000136

## TRADEMARKS

### Dad's Products Company, Inc. (Canada Only)

Design
Fantasy
Gaines
Gaines All Round
Gaines Denta Care
Gaines & Design
Gaines Dog Meal & Design
Gaines Full Course
Gaines Meal
Gaines Puppy Burgers
Gaines Puppy Choice
Gaines Puppy Diet
Gaines Puppy Formula
Gaines Select
Gaines Tender Chunks
Gaines Extra
Love My Cat
More Beef Better Taste & Bull's Head Design
Plus de Boeuf Meilleur Gout & Bull's Head Design
Rally
Roundup
Sitting Dog Design
Gaines-Burgers
Gaines Prime
Gaines Supurrb
Money Saver

### Pet Life Foods, Inc.(USA Only)

Fantasy
Love My Cat
Me & My Cat
Me and My Cat
Me and My Dog
Pick-of-the-Litter

### SCHEDULE 1

## LIST OF CUSTOMERS

| Account | City | State/Province |
|---|---|---|
| A & P | Toronto | ON |
| A.J. Turvey & Company | Brampton | ON |
| | N. York | ON |
| Ahold Financial | Chicopee | MA |
| | Readville | MA |
| Akel Wholesale | Johnson City | NY |
| Albertsons Fort Worth | Fort Worth | TX |
| | Tulsa | OK |
| Albertsons Orlando | Plant City | FL |
| Anipet Animal Supplies | Surrey | BC |
| Associated Wholesalers Inc. | ROBESONIA | PA |
| Avondale Stores | Jordan Station | ON |
| BI LO Incorporated | Chattanooga | TN |
| | Greenville | SC |
| | Mauldin | SC |
| Brookshire Grocery Co. | MONROE | LA |
| | TYLER | TX |
| Bruno's/Birmingham | Birmingham | AL |
| Burgham Sales | Scarborough | ON |
| C & S Metro Wholesale Grocers | New Brunswick | NJ |
| | North Brunswick | NJ |
| C & S Wholesale Grocers, Inc. | Brattleboro | VT |
| | HATFIELD, MA | MA |
| | N. Hatfield | MA |
| | Newburgh | NY |
| | NEWBURGH, NY | NY |
| | WINDSOR LK | CT |
| | WINDSOR LK, CT | CT |
| | Winsor Locks | CT |
| | York County | PA |
| | YORK COUNTY, PA | PA |
| Canadian Tire Corp. LTD | Brammpton | ON |
| | Brampton | ON |
| Cohen Wholesale Foods | Granite City | IL |
| Co-Op Atlantic | Gander | NF |
| | Moncton | NB |

## SCHEDULE 2

| Account | City | State/Province |
|---|---|---|
| Demolas Supermarkets | Lawrence | MA |
|  | Tewksbury | MA |
|  | Tewsbury | MA |
| Dollar General | Alachua | FL |
|  | Ardmore | OK |
|  | Fulton | MO |
|  | Goodletsville | TN |
|  | Homerville | GA |
|  | Indianola | MS |
|  | Scottsville | KY |
|  | South Boston | VA |
| Eagle Food Centers | Milan | IL |
|  | MILAN, | IL |
| Elias Head Office | Windsor | ON |
| Epiciers Unis Metro Richelieu | Les Saules | PQ |
|  | Mont Joli | PQ |
|  | Quebec City | PQ |
|  | Riv-Des-Prairiess | PQ |
|  | Riviere-Des Praire | PQ |
|  | Rouyn | PQ |
|  | Rouyn-Noranda | PQ |
| Federated Co-Op (CAL) | Calgary | AB |
| Federated Co-Op (EDM) | Edmonnton | AB |
| Federated Co-Op (SASK) | Saskatoon | SK |
| Federated Co-Op LTD (WPG) | Winnipeg | MB |
| Finlay Greenwood | Hamilton | ON |
| Fleming Companies Inc. | York | PA |
| Fleming Foods/Warsaw | Warsaw | NC |
| Fleming-North East | North East | MD |
| Focenco Ltd. | Stephenville | NF |
| Food Lion | CLINTON | TN |
|  | Disputanta | VA |
|  | Dunn | NC |
|  | Elloree | SC |
|  | Green Castle | PA |
|  | Green Cove Springs | FL |
|  | Plant City | FL |
|  | Salisbury | NC |
| Fortino Supermarket | Hamilton | ON |
| Fred Meyer Inc. | LAYTON | UT |
|  | Tolleson | AZ |
| Giant Eagle/AM Seaway | Bedford Heights | OH |

- 2 -

S 000139

| Account | City | State/Province |
|---|---|---|
| Golub Corporation | Schenectady | NY |
| H.E. Butt Warehouse Payables | HOUSTON | TX |
|  | SAN ANTONIO | TX |
| Hannaford Bros. | Butner | NC |
|  | Portland | ME |
|  | Schodrack Landing | NY |
| Harris Teeter Supermarket | Greensboro | NC |
|  | Indian Trail | NC |
| Hy and Zel | Vaughan | ON |
| Ingles | Black Mountain | NC |
| Jefferson Grocery Co. | Punxsutawney | PA |
| King Soopers | Denver | CO |
| Knob Hill Farms | Buttonville | ON |
|  | Cambridge | ON |
|  | Markham | ON |
|  | Mississauga | ON |
|  | Oshawa | ON |
|  | Pickering | ON |
|  | Toronto | ON |
|  | Weston | ON |
| Loblaw Companies-Atlantic | Halifax | NS |
|  | Hilifax | NS |
|  | Lewisporte | NF |
|  | St. John's | NF |
| Loeb Canada Inc. | Montreal | PQ |
|  | Ottawa | ON |
| Lumsden Bros. LTD | Brantford | ON |
| MacDonalds Consol (BC) | Burnaby | BC |
| Macdonalds Bros. LTD | Thunder Bay | ON |
| MacDonalds Consol (AB) | Calgary | AB |
|  | Edmonton | AB |
| MacDonalds Consol (MB) | Winnipeg | MB |
| Marc Glassman, Inc. | Brookpark | OH |
| Merchant's Distributors | Hickory | NC |
| Mid Mountain | Abingdon | VA |
|  | Abington | VA |
| Minyard Food Stores | Coppell | TX |
| Multi-Mar Pet Products | Concord | ON |
| Nash Finch Lumberton NC | Lumberton | NC |

- 3 -

S 000140

| Account | City | State/Province |
|---|---|---|
| National Grocers | Chatham | ON |
| | Cochane | ON |
| | Cochrane | ON |
| | Erin Mills | ON |
| | Halifax | NS |
| | Hamilton | ON |
| | Kitchener | ON |
| | Lakeside | NS |
| | Lewisporte | NF |
| | London | ON |
| | Mississauga | ON |
| | Moncton | NB |
| | Ottawa | ON |
| | Peterborough | ON |
| | St. Johns | NF |
| | St. John's | NF |
| | Sudbury | ON |
| Northmar Distributors | North Bay | ON |
| | Peterborough | ON |
| OK Grocery Company | Pittsburgh | PA |
| Olean Wholesale | Olean | NY |
| Overwaitea Foods LTD (Alta) | Calgary | AB |
| Overwaitea Foods LTD (B.C.) | Langley | BC |
| Pet Valu Canada Inc. | Markham | ON |
| PETON DISTRIBUTORS INC. | Markham | ON |
| Pets Unlimited | Halifax | NS |
| Piggly Wiggly/Bessemer | Bessemer | AL |
| Piggly Wiggly/Charleston | Charleston | SC |
| | Summerville | SC |
| Placements G.M.R. Alta | Alma | PQ |
| Pratt's Wholesale | Regina | SK |
| Pratts Wholesale Ltd. | Winnipeg | MB |
| Provigo Ctre Dist Epicerie | Laval | PQ |
| Provigo Dist. Inc. (Laval) | Laval | PQ |
| | Ville Vanier | PQ |
| Richfood | Harrisburg | PA |
| | Mechanicsville | VA |
| Riser Foods | Bedford Heights | OH |
| S Rossy Inc. | Montreal | PQ |
| | Ville Mont-Royal | PQ |
| Safeway, Inc. | Kansas City | MO |
| Scanwest Dist. | Brampton | ON |

- 4 -

S 000141

| Account | City | State/Province |
|---|---|---|
| Scot Lad Westville Division | Westville | IN |
| Scott Grocery | Wilkes Barre | PA |
| Seaway Food Town, Inc. | Maumee | OH |
| Shaws Supermarkets | South Easton | MA |
| | Wells | ME |
| Sincere Trading of KBA Co-0p | Totonto | ON |
| Sobeys Inc. # 019 | Riviere Du Loup | PQ |
| | Stellarton | NS |
| Sobeys Inc. # 029 | Oromocto | NB |
| | | NS |
| | Riviere Du Loup | PQ |
| Sobeys Ontario | Milton | ON |
| | Mississauga | ON |
| | Whitby | ON |
| Sobeys Ontario (Axis) | Milton | ON |
| Sobeys Quebec | Duberger | PQ |
| | Montreal | PQ |
| | Montreal-Nord | PQ |
| | Riviere Du Loup | PQ |
| Sobeys West | Calgary | AB |
| | Edmonton | AB |
| | Winnipeg | MB |
| Stop & Shop/North Haven | Chicopee | MA |
| | North Haven | CT |
| | Readville | MA |
| Super Valu Stores Inc. | XENIA | OH |
| Super Valu/Ft. Wayne | Fort Wayne | IN |
| Super Valu/Hazelwood | Hazelwood | MO |
| Super Valu/Maryland | PERRYMAN | MD |
| Supervalu - Food Marketing Div | Minneapolis | MN |
| SuperValu Inc.-Milton Division | Milton | WV |
| Supervalu, Eastern Region | Harrisburg | PA |
| SuperValu-Pittsburgh | BELLE VERNON | PA |
| | New Stanton | PA |
| T.R.A. Foods LTD (NFLD) | Grand Falls | NF |
| | Mt. Pearl | NF |
| | St. John's | NF |
| T.R.A. Foods Ltd. (Midd) | Middleton | NS |

S 000142

| Account | City | State/Province |
|---|---|---|
| The Kroger Company | Atlanta | GA |
| | Bluffton | IN |
| | Cleveland | TN |
| | LAYTON | UT |
| | Nashville | TN |
| | Pueblo | CO |
| | Salem | VA |
| | Springfield | TN |
| The Northwest Company | Winnipeg | MB |
| Tops Market/Finast | Lancaster | NY |
| | Maple Heights | OH |
| United Supermarkets | Cheektowage | NY |
| | Lubbock | TX |
| Wal-Mart Canada | Brampton | ON |
| | Calgary | AB |
| | Cornall | ON |
| | Cornwall | ON |
| | Langley | BC |
| | North Bay | ON |
| | Scarborough | ON |
| | Stoney Creek | ON |
| Weis Markets, Inc. | Milton | PA |
| | Sunbury | PA |
| Western Grocers-Buying | Edmonton | AB |
| | Saskatoon | SK |
| | Vancouver | BC |
| | Winnipeg | MB |
| Winn Dixie/Charlotte | Charlotte | NC |
| | Jacksonville | FL |
| Winn Dixie/Clayton | Clayton | NC |
| Winn Dixie/Jacksonville | Jacksonville | FL |
| Winn Dixie/Miami | Miami | FL |
| Winn Dixie/Orlando | Miami | FL |
| | Orlando | FL |
| Winn Dixie/Pompano | Pompano Beach | FL |
| Winn Dixie/Texas | Ft. Worth | TX |
| Woofy's Discount Pet Food | Courtney | BC |
| Zellers Inc. | Brampton | ON |
| | Scarborough | ON |
| | Toronto | ON |

S 000143

# EXHIBIT "F"

## TRADEMARK LICENSE AND TRANSFER AGREEMENT

THIS TRADEMARK LICENSE AND TRANSFER AGREEMENT ("Agreement") is entered into as of the _1st_ day of September, 2001, (the "Effective Date") by and between Pet Life Foods, Inc., a corporation organized under the laws of the State of Illinois ("Pet Life"), and Sergeant's Pet Care Products, Inc., a corporation organized under the laws of the State of Nevada ("Sergeant's").

### Background

Pet Life is the owner, in the United States, of certain trademarks, associated and related logos, related trade dress, and trademark registrations as identified on Exhibit A attached hereto (the "Trademarks");

Pet Life desires to sell the Trademarks to Sergeant's and Sergeant's desires to buy the Trademarks and grant Pet Life a license to use certain of the Trademarks.

## AGREEMENT:

THEREFORE, in consideration of the mutual covenants exchanged herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. **Sale of Trademarks.**

   a.      Sergeant's shall purchase from Pet Life all of Pet Life's right, title and interest in and to the Trademarks identified on Exhibit A.  The sale of the Trademarks shall be effective as of September 1, 2001.

   b.      In addition to the payment of $600,000, Sergeant's hereby agrees to assume and pay any and all additional payments due to Gaines Pet Foods Corp., pursuant to the Supplier and Royalty Agreement dated November 23, 1999, in an amount of up to $270,000 and any and all amounts due to Whitecap, Inc., Gerald Shulman and David Kofsky, pursuant to a Sales and Marketing Agreement dated November 16, 1999, in an amount up to $50,000.

2. **License.**

   a.      Sergeant's hereby grants Pet Life a non-exclusive license to sell products, approved by Sergeant's, under the Trademarks for a period of one year (the "License Period").  During the term of the License Period, Pet Life must notify Sergeant's of the product being sold under the Trademark and Sergeant's shall have the right to monitor the quality of the product being sold and may revoke the license if Pet Life fails to maintain a quality and/or customer service standard acceptable to Sergeant's.  Pet Life shall pay to Sergeant's a license fee equal to 5% of net sales as determined by



Δ π EXHIBIT _4_
Deponent _Scharf_
Date _8/10/05_ Rptr. _MM_
WWW.DEPOBOOK.COM

S 000160

Sergeant's. Pet Life shall pay to Sergeant's a license fee equal to 5% of net sales as determined by Sergeant's (the "License Fee"). The License Fee shall be paid on the 15th day of the month following each calendar quarter. Sergeant's acknowledges that the License Fee cannot be paid until Pet Life obtains the consent of LaSalle Business Credit, Inc. ("LaSalle"). If a payment is delayed, it shall accrue interest at 10% per annum.

  b.  Sergeant's shall have the right to terminate the license, as to sales of trademarked products to any particular customer, at such time as Sergeant's elects to sell products directly to such customer. Pet Life shall transfer to Sergeant's the plates for each customer's work at the time that Sergeant's notifies Pet Life that Sergeant's intends to produce the trademarked product for that customer. Pet Life shall be the preferred provider for all trademarked products and Sergeant's shall offer Pet Life the right to produce and package the trademarked products if Pet Life is competitive as to price and can provide reasonable assurances of delivery in accordance with the terms of the orders in question.

  c.  Pet Life hereby grants Sergeant's a non-exclusive license to the Trademark, "Pet Life," for a period of one year. During this period, Sergeant's must notify Pet Life of the products being sold, and Pet Life may revoke the license if Sergeant's fails to maintain a quality and/or customer service standard acceptable to Pet Life. The consideration for the license shall be the amounts described in Paragraph 1.

3.  **Ownership.**

  a.  Pet Life acknowledges and agrees that Sergeant's is the sole owner of all right, title and interest in and to the Trademarks and that all intellectual property rights that may be acquired by the use of the Trademarks by Pet Life shall inure to the sole benefit of Sergeant's.

  b.  Pet Life agrees that it will not directly or indirectly challenge or contest Sergeant's sole ownership of the Trademarks, attempt to register the Trademarks (or any trademarks confusingly similar thereto) in any jurisdiction. Pet Life may use the Trademarks in connection with the sale of pet treats and pet food products (the "Licensed Goods") in any manner it deems appropriate during the term of the license. Pet Life agrees to execute such further documents as may be reasonably required to effectuate the assignment to Sergeant's of any intellectual property rights that Pet Life may acquire in the Trademarks, including any goodwill associated with the Trademarks.

4.  **Pet Life Warranties and Representations.**

  a.  Pet Life warrants and represents that on the date hereof, Pet Life owned all right, title and interest in and to the Trademarks and the transfer described herein shall be free and clear of all liens and encumbrances, except the lien in favor of LaSalle in the amount of $200,000. In the event that Sergeant's is required to make a payment in respect of the $200,000 lien in favor of LaSalle, Pet Life shall pay all such amounts to Sergeant's, plus interest at 15% per annum. Pet Life further

Trademark License and Transfer Agreement
Page 2

S 000161

represents and warrants that its use of the Trademarks shall be conducted in accordance with all applicable foreign, domestic, federal, state and local laws, regulations, restrictions, rules, ordinances and orders.

  b.  Pet Life warrants and represents that it will take no action which is likely to damage or impair the quality image and goodwill associated with the Trademarks.

  c.  This license is terminable by Sergeant's on three (3) days notice if Sergeant's believes that the representations set forth in Paragraph 3 have been breached.

5.  **Term and Termination.**

  a.  This Agreement shall commence as of the Effective Date and shall continue for a period of one (1) year unless earlier terminated as set forth herein.

  b.  The terms and conditions of this Agreement relating to ownership, warranty, disclaimer of warranties, limitation of liability, indemnification and confidentiality shall survive termination of this Agreement.

6.  **Limitation of Liability.**

  a.  Pet Life expressly acknowledges and agrees that Pet Life shall bear sole responsibility for all damages or losses of any kind whatsoever, including without limitation, any economic loss, property damage, physical injury, lost profits or lost savings arising out of Pet Life's use of the Trademarks or the inability to use the Trademarks

  b.  Without limiting the generality of the foregoing, Pet Life expressly acknowledges and agrees that Sergeant's shall not, under any circumstances, be liable to Pet Life or any third party for any indirect, special, consequential, punitive or exemplary damages or losses of any kind whatsoever, including without limitation, any economic loss, property damage, physical injury, lost profits or lost savings arising out of Pet Life's use of the Trademarks, or the inability to use the Trademarks.

7.  **Indemnification.**  Pet Life agrees to defend, indemnify and hold harmless Sergeant's, its parents, subsidiaries, affiliates, officers, directors, employees and agents from and against all claims (including attorney's fees) arising out of Pet Life's use of the Trademarks, including but not limited to any claims based upon product liability, but excluding any claims arising out of a breach of Sergeant's warranties and representations.

S 000162

8. **Insurance.**

a.    Pet Life agrees to maintain liability and other insurance including, but not limited to, comprehensive general liability and broad form contractual, employee liability and product liability insurance, with limits of liability not less than Two Million Dollars ($2,000,000.00) per occurrence, combined single limit for bodily injury and property damage, and statutory workers compensation in all states wherein Pet Life's employees can be found.

b.    All such insurance is to be purchased from reputable, duly qualified insurance companies, and such insurance is to be maintained during the term of this Agreement and for a minimum of one year thereafter. Pet Life agrees to furnish Sergeant's upon request certificates of insurance properly executed by Pet Life's insurance company evidencing such insurance, and to give Sergeant's thirty (30) days notice of any cancellation or material alteration of such insurance coverage.

9. **Protection of Trademarks.**

a.    The parties agree to promptly notify each other of any actual or threatened infringement of any of the Trademarks by any third party. The parties further agree to promptly notify each other of any actual or threatened claim that any of the Trademarks infringe upon third party rights.

b.    In the event that Pet Life, in its sole discretion, should determine to prosecute or defend any action involving the Trademarks, Sergeant's shall, at Pet Life's expense, provide reasonable information and assistance to Pet Life in connection with such prosecution or defense. Any such proceedings shall be at the expense of Pet Life and any monetary recoveries shall be shared by Licensee and Licensor as Licensor may deem appropriate.

c.    The parties acknowledge and agree that nothing contained herein shall be construed as obligating either party to take any action against any alleged infringement of the Trademarks or to defend any action brought by any third party except Pet Life shall be required to defend the title to the Trademarks.

d.    Sergeant's agrees to file new applications to register the Trademarks and to maintain existing registrations for the Trademarks, to the extent that such applications and registrations may be filed or maintained under applicable law, and to the extent that Sergeant's deems such applications or registrations appropriate and such expenses shall be paid by Sergeant's. Sergeant's shall take such actions to register and maintain Trademarks as Pet Life may request, but such actions shall be at Pet Life's expense. Pet Life agrees to execute such documents and to provide such information and materials as may be required to facilitate the filing of such new applications and the maintenance of such existing registrations.

S 000163

10.   **Confidentiality.**

a.     In connection with the parties' performances hereunder, each party to this Agreement may be required to disclose to the other party certain confidential or otherwise proprietary information. The parties agree that the receiving party will use reasonable efforts to maintain the secrecy of any confidential or otherwise proprietary information received from the disclosing party and designated in writing as confidential ("Confidential Information").

b.     The term "Confidential Information" shall not include any information that is: (i) already known to or otherwise in the possession of the receiving party at the time of receipt from the disclosing party, (ii) publicly available or otherwise in the public domain, (iii) rightfully obtained by the receiving party from any third party without restriction and without breach of this Agreement by the receiving party, or (iv) independently developed hereafter by the receiving party without reference to the information received from the disclosing party.

11.   **Assignment and Sublicensing of License Grant.**   Pet Life acknowledges and agrees that the rights and obligations contained herein are personal to Pet Life and that Pet Life may not assign or sublicense any of its rights or obligations hereunder to any third party without the express written consent of Sergeant's, except Pet Life may assign any and all of the rights described hereunder to LaSalle.

12.   **Notices.**      All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally, telecopied or mailed by registered or certified mail (return receipt requested) or sent by Federal Express or other recognized overnight courier to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(a)     If to Pet Life, to:

Mr. Bruce Atherley, President
Pet Life Foods, Inc.
4355 Ferguson Dr., Suite. 150
Cincinnati, OH 45245
Facsimile:513/947-1915

(b)     If to Sergeant's, to:

Robert Scharf, President
Sergeant's Pet Products, Inc.
14748 W. Center Road, Suite 303
Omaha, NE  678144
Facsimile: 402/938-7092

Trademark License and Transfer Agreement
Page 5

S 000164

(c)     With copies of all notices to:
Steven E. Smathers, Esq.
Attorney at Law
1601 Elm Street, Suite 300
Dallas, TX  75201
Facsimile: 214/871-1620

All notices, requests or instructions given in accordance herewith shall be deemed given (i) on the date of delivery, if hand delivered, (ii) on the date of receipt, if telecopied, (iii) three business days after the date of mailing, if mailed by registered or certified mail, return receipt requested, and (iv) one business day after the date of sending, if sent by Federal Express or other recognized overnight courier.

13.     **Governing Law.**     This Agreement, including its interpretation, performance and enforcement shall be governed by and construed in accordance with the laws of the state of Texas.

14.     **Binding Effect.**     This Agreement shall inure to the benefit of and be binding upon the parties hereto and to their respective successors, assigns and legal representatives.

15.     **Nonwaiver.**     No provisions of this Agreement will be waived by any party except in writing. The parties hereto agree that the waiver by any party of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of that provision by the same party, or any other provision or condition of this Agreement.

16.     **Severability.**     If any provision or application of this Agreement shall be held invalid or unenforceable, the remaining provisions and applications of this Agreement shall not be affected, but rather shall remain valid and enforceable.

17.     **Entire Agreement.**     This Agreement constitutes the entire agreement and supersedes any and all other understandings and agreements between the parties with respect to the subject matter hereof and no representation, statement or promise not contained herein shall be binding on either party. This Agreement may be modified only by a written amendment duly signed by persons authorized to sign agreements on behalf of the parties and shall not be supplemented or modified by any course of dealing or trade usage.

S 000165

IN WITNESS WHEREOF, the parties have hereunder executed this Agreement **effective as** of September 1, 2001.

Sergeant's Pet Care Products, Inc.

By: _Robert Schrift_

Name: _Robert Schrift_

Title: _President_

Pet Life Foods, Inc.

By: _Bruce Atherley_

Name: _Bruce Atherley_

Title: _CEO_

P:\ssmathers\SOWELL\Pet Life\DOCS\Trademark Agreement with
Sergeant's Execution copy.doc

Trademark License and Transfer Agreement

Page 7

S 000166

## Exhibit A
## Trademarks

| Mark | Application No. | Filing Date | Registration No. | Registration Date |
|------|------|------|------|------|
| PEOPLE CRACKERS | | | 1,593,298 | 04/24/90 |
| | | | 843,886 | Mexico |
| LOLLI-PUPS | | | 569,205 | 01/13/53 |
| DOGGIE DONUTS | | | 1,273,795 | 04/10/84 |
| SAY CHEESE | | | 848,256 | Mexico |
| SIRLOINS | 76/015,808 | 04/03/2000 | | |
| MUNCHEEZ BEEF AND CHEESE TREAT | | | 2,084,349 | 07/29/97 |
| SCHNITZEL SNACKS | | | 1,691,000 | 06/02/92 |
| STEAKHOUSE STRIPS | 76/193,156 | 01/16/01 | | |
| NUTRI-DOG BARS | 76/057,760 | 05/26/2000 | | |
| SEASON'S TREATINGS | 76/073,539 | 06/19/2000 | | |
| DOG NOG | 76/071,358 | 06/16/2000 | | |
| BEER BONES | 76/073,519 | 06/19/2000 | | |
| NUTRI-CAT | 76/146,796 | 10/16/2000 | | |
| TREAT-TABS | 76/146,794 | 10/16/2000 | | |
| DENTA FRESH | 76/084,356 | 07/07/2000 | | |
| DENTAPLUS | 76/234,574 | 04/02/01 | | |
| ON POINT | 76/100,352 | 05/08/2000 | | |
| CATNIPTIONS | 76/146,795 | 10/16/2000 | | |
| TROPICAL TREATS | 76/193,155 | 01/16/01 | | |
| IT'S A DOG'S LIFE | 76/001,573 | 03/16/2000 | | |
| LICKS & KISSES | 76/015,809 | 04/03/2000 | | |
| PURRSCRIPTIONS | 76/146,793 | 10/16/2000 | | |
| PURRSUASIONS | 76/146,792 | 10/16/2000 | | |
| PURRS | 76/146,791 | 10/16/2000 | | |
| PURRSONALS | 76/146,790 | 10/16/2000 | | |
| CHEESEWICHES | 76/175,987 | 12/05/2000 | | |
| TREATWICHES | 76/175,986 | 12/05/2000 | | |
| CAT LIFE | | | 1,594,475 | 05/01/90 |
| BURGLAR CONFIGURATION | | | 1,657,561 | 09/17/91 |
| DOG CATCHER CONFIGURATION | | | 1,651,611 | 07/23/91 |
| MAILMAN CONFIGURATION | | | 1,667,782 | 10/10/91 |
| MILK MAN CONFIGURATION | | | 1,651,612 | 07/23/91 |
| POLICEMAN CONFIGURATION | | | 1,649,626 | 07/02/91 |
| TREATERS | | | 1,461,227 | 10/13/87 |
| DOG LIFE AND DESIGN | | | 577,878 | 07/28/53 |
| DOG LIFE TASTY VITTLES AND DESIGN | | | 748,854 | 04/30/63 |

S 000167

| Mark | Application No. | Filing Date | Registration No. | Registration Date |
|------|----------------|-------------|------------------|-------------------|
| DOGGIE FRANKS | | | 1,438,258 | 04/28/87 |
| HI-LIFE AND DESIGN | | | 389,548 | 08/12/41 |
| LOLLI-PUPS CANADA | | | 209,689 | 09/26/75 |
| LOLLI-PUPS AND DESIGN | | | 569,205 | 01/13/57 |
| MY DOGGIES BAG | | | 1,460,847 | 10/13/87 |
| PEOPLE CRACKERS (MEXICO) | | | 552,254 | Not Available |
| TRAIL CALL | | | 889,124 | 04/07/70 |
| DOG HEAD LOGO | | | 1,882,414 | 03/07/95 |
| CAT HEAD LOGO | | | 1,859,904 | |
| HI-LIFE | | | 1,878,815 | 02/14/95 |
| FANTASY | | | 1,508,487 | 10/25/94 |
| LOVE MY CAT | | | 1,422,199 | 12/23/86 |
| ME & MY CAT | | | 1,461,218 | 10/13/87 |
| ME & MY DOG | | | 1,393,471 | 05/13/86 |
| PICK-OF-THE-LITTER | | | 1,476,130 | 02/09/88 |
| TRAINING WHEELS | | | 1,839,060 | 06/07/94 |

S 000168

## EXHIBIT B

### Licenses

**The licenses described in this Agreement.**

S 000169