IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | | |
|---|---|---|
| DAD'S PRODUCTS COMPANY, INC., | ) | |
| | ) | |
| | ) | Civil Action No. 03-350 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | The Honorable Sean J. McLaughlin |
| SERGEANT'S PET CARE PRODUCTS, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S CONCISE STATEMENT OF MATERIAL FACTS IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Sergeant's Pet Care Products, Inc. ("SPCP") files this Concise Statement of Material Facts in Support of Motion for Summary Judgment pursuant to Local Rule 56.1 B.1:

1. Plaintiff is not a party to any contract with SPCP.

2. Gaines Pet Foods Corporation ("Gaines") was a major manufacturer and distributor of pet treats, dog biscuits and other pet food products. Complaint ¶5 [Appendix, Ex. 1].[1]

3. In November 1999, Plaintiff, Pet Life Foods, Inc. ("Pet Life") and Gaines, among other entities not parties to this action, entered into an Asset Purchase Agreement (the "Asset Purchase Agreement") and a Supplier and Royalty Agreement (the "Royalty Agreement") by which Plaintiff and Pet Life agreed to purchase all intellectual property, customer and supply lists,

---

[1] Pursuant to Local Rule 56.1 B.3, SPCP files concurrently herewith its Appendix, which, where applicable, contains only those cited provisions from documents referenced herein in order to avoid burdening the Court with duplicative exhibits. SPCP, therefore, hereby incorporates by reference in full its Motion for summary judgment and Memorandum in support thereof and all exhibits thereto, which is being filed concurrently herewith.

licenses and permits, goodwill and certain assets of Gaines for the purchase price of $2,550,000.00. Complaint ¶¶10, 11 [Appendix, Ex. 1], Complaint, Ex. A, Asset Purchase Agreement Article 2 [Appendix, Ex. 2].

4. Under the Royalty Agreement, Plaintiff and Pet Life *jointly and severally* agreed to pay to Gaines a royalty based upon certain sales related to the assets purchased from Gaines (the "Royalty" or the "Royalty Payments"). Complaint ¶¶10, 15 [Appendix, Ex. 1], Royalty Agreement,[2] Article 3 [Appendix, Ex. 3].[3]

5. After execution of the Royalty Agreement, Pet Life and Plaintiff began to make their respective payments of the Royalty. Complaint ¶19 [Appendix, Ex. 1].

6. Plaintiff and Pet Life thereafter formed Maple Leaf Pet Care LLC ("Maple Leaf"), to provide administrative services for certain joint customer accounts purchased from Gaines and to serve as a repository for ownership of certain trademarks acquired under the Asset Purchase Agreement. Complaint ¶20 [Appendix, Ex. 1].

7. In addition, in November 1999, Plaintiff and Pet Life allegedly entered into a Sales and Marketing Agreement (the "Marketing Agreement") with Whitecap, Inc. (not a party to this action) and two non-party individuals (collectively, "Whitecap"). Pursuant to the Marketing Agreement, Whitecap was to provide various sales and marketing services to certain customer

---

[2] Plaintiff states that a copy of the Royalty Agreement is attached to the Complaint as Exhibit B, but no copy of the Royalty Agreement was attached to the Complaint served on SPCP. Accordingly, references herein to the Royalty Agreement shall only refer to it as an exhibit to SPCP's Appendix.

[3] More particularly, Plaintiff and Pet Life jointly and severally agreed to pay a royalty equal to 2% of the net sales of existing pet food products and pet treat products made by Plaintiff and Pet Life to existing customers of Gaines for each royalty year during the royalty term, with a minimum yearly royalty of $300,000.00 and a maximum annual royalty of $440,000.00. Complaint ¶¶10, 15 [Appendix, Ex. 1] and Royalty Agreement, Article 3 [Appendix, Ex. 3].

accounts purchased by Plaintiff and Pet Life under the Asset Purchase Agreement in exchange for certain compensation. Complaint ¶21 [Appendix, Ex. 1].

8. In August 2001, Plaintiff and Pet Life entered into a Settlement Agreement (the "Settlement Agreement") pursuant to which Plaintiff and Pet Life fixed their respective obligations under the Royalty Agreement and agreed to terminate the Marketing Agreement. More specifically, Plaintiff and Pet Life agreed (a) that Pet Life would pay 60% and Plaintiff would pay 40% of the joint and several royalty obligations due to Gaines under the Royalty Agreement, and (b) to share any expenses related to the termination of the Marketing Agreement (such as termination payments to Whitecap) equally. Complaint ¶¶23-25 [Appendix, Ex. 1] and Complaint Exhibit D, Settlement Agreement ¶¶1, 4 [Appendix, Ex. 4].

9. Gaines and Whitecap were not parties to the Settlement Agreement.

10. In September 2001, Pet Life and SPCP entered into a Trademark License and Transfer Agreement (the "Transfer Agreement") pursuant to which SPCP purchased certain assets, including certain specified trademarks, that Pet Life had acquired from Gaines. Complaint, ¶¶26, 28 [Appendix, Ex. 1] and Transfer Agreement, ¶1 [Appendix, Ex. 5].

11. In exchange, Pet Life and SPCP agreed that SPCP would make up to $320,000 in payments due by Pet Life to Gaines under the Royalty Agreement and certain additional payments due Whitecap under the Marketing Agreement. Complaint ¶¶26-28 [Appendix, Ex. 1] and Transfer Agreement, ¶1 [Appendix, Ex. 5].

12. SPCP made approximately $90,000 in payments due by Pet Life to Gaines under the Royalty Agreement and to Whitecap under the Marketing Agreement.

13. In May 2002, SPCP, Pet Life and Pet Life's secured lender LaSalle Business Credit, Inc. ("LaSalle") entered into a Settlement and Cooperation Agreement (the "Cooperation Agreement"). Pursuant to the Cooperation Agreement, Pet Life, for fair consideration, *inter alia*, released SPCP from any obligations under the Transfer Agreement with respect to any Royalty Payments to be paid by SPCP to Gaines on Pet Life's behalf. Complaint ¶35 [Appendix, Ex. 1], Cooperation Agreement, Recital C, [Appendix, Ex. 6].

14. In exchange, SPCP agreed to pay the amount of $362,112.13 to LaSalle on behalf of Pet Life for obligations due by Pet Life to LaSalle, and Pet Life agreed that SPCP could offset the $442,000 due from Pet Life to SPCP against any residual obligation which may be due from SPCP to Pet Life. Cooperation Agreement, Recital C [Appendix, Ex. 6].[4]

15. Pet Life was at no time released from its obligations and liabilities to Plaintiff under the Royalty Agreement -- even if it assigned rights or obligations to another party such as SPCP. *See* Complaint ¶18 [Appendix, Ex. 1], Royalty Agreement ¶4.4 [Appendix, Ex. 8] and Complaint Ex. B, Settlement Agreement, ¶¶1, 4 [Appendix, Ex. 4].[5]

---

[4] Recital C of the Cooperation Agreement references a May 2, 2002 Notification and Cancellation Agreement between Pet Life and SPCP ("Notification Agreement"). The Notification Agreement provides that a no-offset letter is deemed of "no force or effect" and all parties thereto agree to the terms of the offset contained therein. [Notification Agreement ¶6, Appendix, Ex. 7]. The Notification Agreement further contains an acknowledgement that SPCP is not obligated to make any further payment to Gaines nor any payments to Whitecap. [Notification Agreement ¶5, Appendix, Ex. 7].

[5] Also in September 2001, Pet Life and SPCP entered into a Trademark and License Mortgage (the "Mortgage") with LaSalle Business Credit, Inc. ("LaSalle"), Pet Life's secured lender. Complaint ¶29 [Appendix, Ex. 1]. LaSalle is also not a party to this action. Under the Mortgage, SPCP, *inter alia*, granted LaSalle a security interest in the trademarks that Pet Life had transferred to SPCP under the Transfer Agreement and LaSalle consented to the transfer of the trademarks from Pet Life to SPCP. Complaint ¶30 [Appendix, Ex. 1].

16. Pet Life was in fact expressly precluded from being so released by the terms of the Royalty Agreement.  *See* Complaint ¶18 [Appendix, Ex. 1] and Royalty Agreement ¶4.4 [Appendix, Ex. 8].

17. SPCP was not a guarantor or obligor of Pet Life's obligations to Plaintiff under the Royalty Agreement [or the Settlement Agreement].

18. In or around May 23, 2002, and pursuant to an Agreement by and between Plaintiff, Pet Life and Shato Holdings Ltd. ("the Agreement"), Plaintiff acknowledged that it had been advised that Pet Life would not be making any further payments of the Royalty.  [Agreement, p. 1, Appendix, Ex. 9].

19. The Agreement was entered into after the Transfer Agreement and after SPCP was released by Pet Life under the Cooperation Agreement.

20. Through the Agreement, Plaintiff was assigned all of Gaines' rights, if any, against Pet Life arising out of the Royalty Agreement.  Agreement ¶2, [Appendix, Ex. 9].  Plaintiff was not assigned any rights or claims against SPCP through the Agreement.

21. SPCP did not fail to pay any amounts that it may have been obligated to pay to Whitecap under the Marketing Agreement.

22. Plaintiff did not pay any amounts to Whitecap that Pet Life or SPCP may have been obligated to pay under the Marketing Agreement.

23. Plaintiff did not give notice to Pet Life of its decision to pay off Gaines.

-6-

Dated: September 26, 2005

Respectfully submitted,

By: /s/ David White, Esquire
    David E. White
    THORP REED & ARMSTRONG, LLP
    Pa. I.D. No. 59659
    One Oxford Centre
    301 Grant Street, 14th Floor
    Pittsburgh, PA 15219
    (412) 394-2343

    Attorneys for Defendant,
    Sergeant's Pet Care Products, Inc.

OF COUNSEL

Sally C. Helppie
Texas Bar No. 09403800
Gregory P. Supan
Texas Bar No. 24005892
BELL NUNNALLY & MARTIN LLP
1400 One McKinney Avenue
232 McKinney Avenue
Suite 1400
Dallas, Texas 75204
(214) 740-1400

-7-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Concise Statement of Material Facts in Support of Motion for Summary Judgment has been served upon counsel of record this 26th day of September, 2005 by U.S. Mail, first class, postage prepaid, as follows:

Richard A. Lanzillo, Esq.<br>
Knox McLaughlin Gornall & Sennett, P.C.<br>
120 West Tenth Street<br>
Erie, PA 16501-1461

/s/ David White, Esquire
David E. White