## SUPPLIER AND ROYALTY AGREEMENT

THIS AGREEMENT made as of the 23rd day of November, 1999

BETWEEN:

**DAD'S PRODUCTS COMPANY, INC.**, a corporation existing under the laws of the State of Pennsylvania

(hereinafter called "Dad's")

- and -

**PET LIFE FOODS, INC.**, a corporation existing under the laws of the State of Illinois

(hereinafter called "Pet Life")

- and -

(Dad's and Pet Life being hereinafter each referred to as a "Buyer" or collectively referred to as the "Buyers")

- and -

**GAINES PET FOODS CORP.**, a corporation existing under the laws of the Province of Ontario

- and -

**GAINES PET FOODS**, a partnership existing under the Province of Ontario

(hereinafter collectively referred to as the "Seller")

- and -

**SHATO HOLDINGS LTD.** a corporation existing under the laws of the Province of British Columbia

(hereinafter called the "Shareholder").

EXHIBIT 3

S 000099

- 8 -

### 2.9 License to Use Trademarks

(a) Subject to the conditions and restrictions set out below, the Buyers hereby grant to the Seller a non-transferable right to use, on a non-exclusive basis, the trademarks (the "Trademarks") purchased by the Buyers as set out in Schedule 3.1(p) of the Purchase Agreement for the purposes of enabling the Seller to comply with its obligations to manufacture and supply the Products hereunder and for no other purpose.

(b) The grant of the license hereunder this Section 2.9 shall terminate at the end of the Supply Period or such earlier date as the Buyers, in their sole discretion, may notify the Seller; provided however, that, notwithstanding the foregoing, the Seller shall, for a period of six months from the end of the Supply Period, have the limited use of the Trademarks which relate to any finished goods inventory which the Seller owns at the end of the Supply Period and which Buyer has declined to purchase for the sole purpose of selling such inventory.

(c) The Seller undertakes to use the Trademarks in strict accordance with the quality standards set out in Section 2.4 above and with the instructions, standards of quality and trademark specifications supplied by the Buyers from time to time, and to use each of the Trademarks only in association with the manufacture and supply of the Products by the Seller hereunder.

(d) The Seller undertakes not to authorize any third party to use the Trademarks.

(e) The Seller acknowledges and agrees that it has no right, title or interest in or to the Trademarks, nor any part thereof, except the use of the same as herein set out and that nothing in this Agreement shall be construed as an assignment or grant to the Seller of any right, title or interest to the Trademarks.

(f) The Seller agrees not to challenge, directly or indirectly, the Buyers' right, title or interest in the Trademarks or any one or more of them.

## ARTICLE 3 - ROYALTY PAYMENTS

### 3.1 Royalty Payments

In consideration of the agreement set forth in Section 2.3:

(a) Dad's and Pet Life jointly and severally agree to pay to the Seller a royalty equal to 2% of the Net Sales of Existing Pet Food Products made by Dad's to Existing Pet Food Customers for each Royalty Year during the Royalty Term.

S 000106

- 9 -

(b) Dad's and Pet Life jointly and severally agree to pay to the Seller a royalty equal to 2% of the Net Sales of Existing Pet Treat Products made by Pet Life to Existing Pet Treat Customers for each Royalty Year during the Royalty Term.

(c) If the total royalty payments in any Royalty Year are less than $300,000, Dad's and Pet Life shall jointly and severally make additional payments which, in the aggregate, equal to the amount which results when the amount of royalty payments made in such Royalty Year is subtracted from $300,000. Notwithstanding the foregoing, in no event shall Dad's and Pet Life pay to the Seller less than an aggregate of $75,000 per quarter as computed on a cumulative quarterly basis for the applicable Royalty Year.

(d) The maximum royalty payments payable by the Buyers to the Seller hereunder in any Royalty Year shall be $440,000. If any payments are made in error in excess of $440,000, the Seller shall forthwith return any excess to Pet Life, as agent for the Buyer.

3.2 **Payment Date**

The royalty payments contemplated herein shall be made by the Buyer to the Seller within 30 days from the end of each quarter of each Royalty Year.

3.3 **Reports**

(a) If the Seller has received royalty payments less than $440,000 in any Royalty Year, then, within 90 days after the end of such Royalty Year, the applicable Buyer shall provide the Seller with a report of the Net Sales of Existing Pet Food Products or Existing Pet Treat Products to Existing Pet Food Customers or Existing Pet Treat Customers, as the case may be, made by such Buyer. All such reports of the Buyers are to be attested to and signed by a senior officer of such Buyer as being true, complete and accurate, and shall include all of the necessary information to permit the Seller to determine that the amount of the royalty payment paid by the Buyer for each Royalty Year is the full amount which is due and payable provided, however, that a Buyer shall not be required to identify sales to any specific customer.

(b) The Seller agrees that all information contained in such reports provided by the Buyers is confidential and shall not be used by the Seller for any purposes other than calculating the Net Sales made during any Royalty Year.

S 000107

- 10 -

### 3.4 Books and Records

Each of the Buyers shall keep true and accurate records and books of account containing all data reasonably required for the computing of and verification of the Net Sales. Such records shall be retained for at least seven years following the payment therefor and shall be available during normal business hours for inspection by the Seller or its professional representatives for the purpose of verifying the Net Sales. In the event that any such inspection shows an underpayment by a Buyer for any Royalty Year, then such Buyer shall pay to the Seller the amount of such underpayment within 15 days of the completion of such inspection by the Seller in addition to interest which would have accrued on the amount of such underpayment at the U.S. prime rate from time to time charged plus 5% (calculated from time to time from the end of the preceding Royalty Year until the date on which underpayment is made to the Seller. In the event that any such inspection shows an underpayment by a Buyer in excess of five percent for the preceding Royalty Year, then such Buyer shall pay to the Seller the reasonable costs of the inspection incurred by the Seller.

## ARTICLE 4 - GENERAL PROVISIONS

### 4.1 Indemnification

(a) The Seller hereby agrees to assume liability for, and does hereby agree to indemnify, protect, save and keep harmless each of the Buyers and their respective successors, assigns, legal representatives, agents and servants, from and against, any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, expenses or disbursements (including legal fees and expenses) of any kind and nature whatsoever which may be imposed on, incurred by or asserted against either of the Buyers or any of their respective successors, assigns, legal representatives, agents and servants (whether or not also indemnified against by the manufacturer(s) or any other person), in any way relating to or arising out of this Agreement or any documents contemplated hereby, or the performance or enforcement of any of the terms hereof, or in any way relating to or arising out of all third party claims arising out of, or in connection with, the production by the Seller of the Products or the sale or consumption of the Products provided, however, that the Seller shall not be required to assume any liabilities for or indemnify the Buyers hereunder this Section 4.1 as a result of the negligence of the Buyers.

(b) Under no circumstance will the aggregate costs payable by the Seller to the Buyers pursuant to Section 4.1(a) hereunder exceed the aggregate of the following amounts:

(i) the Purchase Price (as such term is defined in the Purchase Agreement); and

(ii) the aggregate of all amounts payable by Dad's and Pet Life pursuant to Section 3.1 hereunder.

S 000108