# SETTLEMENT AGREEMENT

*Final Signed Agreement 8/9/01 received by fax from Alan Brain @ Pet Life*

WHEREAS, DAD'S PRODUCTS COMPANY, INC. ("Dad's") a [   ] INC. ("Pet Life") purchased from GAINES PET FOODS ("Gaines") certain trademarks, customer accounts, and goodwill pursuant to a Purchase Agreement November 23, 1999 (the "Transaction");

WHEREAS, pursuant to a Supplier and Royalty Agreement date[d] Dad's and Pet Life are obligated to Gaines to pay certain royalty payment[s] ("Royalty Obligation") for each calendar year commencing on January 1, 2000 and ending December 31, 2004;

WHEREAS, Dad's and Pet Life formed MAPLE LEAF PET CARE, LLC ("Maple Leaf") in order to provide fulfillment and administrative services for certain joint customer accounts purchased by them from Gaines pursuant to the Transaction;

WHEREAS, Dad's and Pet Life also utilize Maple Leaf as the repository for ownership of certain trademarks acquired from Gaines pursuant to the Transaction which are jointly used by Dad's and Pet Life (the "Trademarks"), which Trademarks are listed on Schedule 1 attached hereto and made a part hereof;

WHEREAS, Dad's and Pet Life entered into a Sales and Marketing Agreement dated November 16, 1999 (the "Marketing Agreement") with Whitecap, Inc., Gerald Shulman, and David Kofsky (collectively "Whitecap"), which obligates Whitecap to provide various sales and marketing services to some of the customer accounts acquired by Dad's and Pet Life pursuant to the Transaction;

WHEREAS, Dad's and Pet Life have incurred (and will continue to incur) various expenses in enabling Maple Leaf to provide fulfillment and administrative services required for the operation of Maple Leaf (the "Services"), and such expenses are subject to (and will continue to be) reimbursement by one party to the other (the "Reimbursements"); and

WHEREAS, Dad's and Pet Life desire to provide for the termination of Maple Leaf and intend to clarify the rights and obligations of the parties with respect to operation of the business acquired in the Transaction, payment of the Royalty Obligation, settlement of their obligation to Whitecap, ownership and use of the Trademarks, and Reimbursement for Services.

NOW, THEREFORE, intending to be legally bound hereby, Dad's and Pet Life agree as follows:

1. **Wind-Down and Termination of Maple Leaf.** Maple Leaf shall be terminated and the parties shall use their best efforts to liquidate the assets and/or distribute them in accordance with this agreement no later than December 31, 2001. To that end, Dad's and Pet Life shall

EXHIBIT D

EXHIBIT 4

immediately implement and execute the liquidation of Maple Leaf's assets and/or distribute them in accordance with this agreement. Following the liquidation, each party shall independently deal with the customers acquired from Gaines with respect to the sale of products by that party to the customers; and each party shall be solely responsible for its own fulfillment and administrative services associated with all such sales. During the wind-down, each party shall cooperate with the other in providing such introductions, information, and other assistance as shall be deemed necessary or desirable by the other party in order to enable it to independently handle its business dealings with the customers following completion of the wind-down.

2. **Reimbursement for Services.** Using their best efforts, within ten (10) days, the parties will complete an analysis of all Services rendered by either party associated with Maple Leaf for the period ended June 30, 2001 (the "Analysis"), which will constitute a full settlement of all Reimbursements owed by either party to the other for the period then ended. For the period beginning July 1, 2001 through December 31, 2001, Pet Life will pay Dad's 1.6% of applicable sales in Maple Leaf for administrative support. Other services rendered between the two companies will be at cost as customary in the previous periods. If acceptable to both parties, the Analysis will be initialed by the chief financial officers of Dad's and Pet Life as evidence of their acceptance of the terms contained therein; and settlement of Reimbursements for the period ended June 30, 2001 shall be made simultaneously therewith.

3. **Settlement with Whitecap.** Dad's and Pet Life agree that certain activities of Whitecap during the term of the Marketing Agreement may have involved willful misconduct and/or gross negligence by Whitecap; and Dad's and Pet Life acknowledge that such conduct may constitute grounds to terminate the Marketing Agreement for cause and without further obligation to Whitecap. Not later than August 15, 2001, Dad's and Pet Life shall provide Whitecap with written notice of termination, which termination shall be effective ninety (90) days thereafter. Such notice shall include, among other things, notification to Whitecap that, unless directed by Dad's or Pet Life for specific accounts, it should immediately desist from making any further communications with the customers, brokers, agents, suppliers (including packaging suppliers), and trade partners previously handled by Whitecap pursuant to the Marketing Agreement; and Dad's and Pet Life shall require strict performance by Whitecap of the restrictive covenants contained in Paragraph (11) of the Marketing Agreement. To the extent that Dad's and Pet Life are obligated to Whitecap for continuation fees and commission payments subsequent to termination of the Marketing Agreement, such obligations shall be paid by the parties as follows: (i) each party shall separately pay commissions applicable to its separate products and (ii) continuation fees shall be shared as follows: Dad's - 50% and Pet Life - 50%. To the extent that the parties incur any expenses related to termination of the Marketing Agreement, all associated costs and expenses (to be approved in advance), including reasonable attorney fees, shall be shared equally by Dad's and Pet Life.

4. **Royalty Obligation.** Dad's and Pet Life acknowledge that the minimum Royalty Obligation owed to Gaines is $300,000 per year. Dad's and Pet Life agree that the minimum Royalty Obligation for 2001 and thereafter shall be shared as follows: Dad's - 40% and Pet Life - 60%. Customer deductions applicable to the business of Gaines prior to the closing of the

Transaction shall continue to be subject to set-off against each party's share of the Royalty Obligation based on a determination whether the customer deduction relates to pet treats or pet foods. In the event of a prepayment, subsequent customer deductions applicable to the business of Gaines prior to the closing of the Transaction shall be borne by Dad's (in the case of a deduction for pet foods) and Pet Life (in the case of a deduction for pet treats).

5. <u>The Trademarks</u>. Maple Leaf shall assign and transfer the Trademarks to Dad's and Pet Life as provided on Schedule 1. For a period of twelve (12) months following execution of this Agreement, each party shall have a non-exclusive royalty-free license to utilize the Trademarks of the other party solely to manufacture, distribute, and sell to Customers (as defined in Paragraph 6 hereof) those products which it currently sells to such Customers.

6. <u>Restrictive Covenant</u>. Schedule 2 attached hereto and made a part hereof contains a complete list of the customers acquired in the Transaction to whom both Dad's and Pet Life are currently transacting business (the "Customers") and the specific location for that Customer. In transacting further business with the Customers at the locations specified on Schedule 2, the parties agree to the following:

(a) For the period commencing on the date of this Agreement and ending on December 31, 2002, Dad's will not, directly or indirectly, manufacture, distribute, or otherwise provide private label soft treats to the Customers. The parties expressly agree that private label soft treats shall not include "jerky" products or injection molded treats.

(b) For the period commencing on the date of this Agreement and ending on December 31, 2002, Pet Life will not, directly or indirectly, manufacture, distribute, or otherwise provide private label "Variety Mix" (Kibble type products) to the Customers.

The parties agree that a breach of these covenants by either party will give rise to irreparable harm to the other party; and, in that event, the injured party shall be entitled to injunctive relief as well as recovery of all monetary damages.

7. <u>Miscellaneous</u>.

(a) Dad's and Pet Life agree to promptly terminate joint warehousing operations in Canada. In all events, Dad's shall be entitled to provide notice that it will neither utilize Canadian warehouse facilities nor be responsible for any charges associated therewith for any period subsequent to September 30, 2001.

(b) This Agreement contains the entire understanding between the parties and supersedes all prior understandings, written or oral, with respect to the subject matter hereof.

(c) This Agreement shall not be altered, amended, or changed except in writing signed by Dad's and Pet Life.

-3-