IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
CIVIL ACTION LAW

| | |
|---|---|
| DAD'S PRODUCTS COMPANY, INC., | ) |
| | ) ELECTRONICALLY FILED BRIEF |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) C.A. No.  03-350-ERIE |
| SERGEANT'S PET PRODUCTS, INC. | ) |
| | ) |
| Defendant | ) |
| | ) |
| | ) |

**DAD'S PRODUCTS COMPANY, INC.'S PRETRIAL STATEMENT**

Plaintiffs, Dad's Products Company, Inc., ("Dad's"), through its counsel, Knox, McLaughlin, Gornall & Sennett, P.C., files the following as its Pretrial Narrative Statement:

**I.     NARRATIVE STATEMENT OF THE CASE**

This case involves royalty payments that Dad's, Sergeant's Pet Products, Inc. ("Sergeant's") and a non-party, Pet Life Foods, Inc. ("Pet Life") owed to Gaines Pet Foods Corp. ("Gaines").  Because Sergeant's refused to pay its proportionate share of those royalty payments, Dad's was required to pay far in excess of its share of those payments to Gaines and instituted this action to recover Sergeant's share of those payments

**A.     The Trademark Purchase From Gaines and the Royalty Obligation**

On November 23, 1999, Dad's and a non-party to this suit, Pet Life, entered into an Asset Purchase Agreement with Gaines and several Gaines-related entities to purchase various trademarks used in the sale of pet food products (the "Trademarks").  As payment for the Trademarks, and the book of customers these trademarks carried with them, Dad's and Pet Life agreed to pay to Gaines $2,550,000 at the time Dad's and Pet Life received the Trademarks.  In

addition to this up-front payment, the parties to this Asset Purchase Agreement also entered into a related Supplier and Royalty Agreement (the "Royalty Agreement").  Pursuant to relevant terms of the Royalty Agreement, Dad's and Pet Life agreed to make quarterly royalty payments to Gaines through December 31, 2004.  (the "Royalty Obligation"). The specific terms governing the Royalty Obligation provided:

(a) Dad's and Pet Life jointly and severally agree to pay to [Gaines] a royalty equal to 2% of the Net Sales of Existing Pet Food Products made by Dad's to Existing Pet Food Customers for each Royalty Year during the Royalty Term.

(b) Dad's and Pet Life jointly and severally agree to pay to [Gaines] a royalty equal to 2% of the Net Sales of Existing Pet Treat Products made by Pet Life to Existing Pet Treat Customers for each Royalty Year during the Royalty Term.

(c) If the total royalty payments in any Royalty Year are less than $300,000, Dad's and Pet Life shall jointly and severally make additional payments which, in the aggregate, equal to the amount which results when the amount of royalty payments made in such Royalty Year is subtracted from $300,000.  Notwithstanding the foregoing, in no event shall Dad's and Pet Life pay to [Gaines] less than an aggregate of $75,000 per quarter as computed on a cumulative quarterly basis for the applicable Royalty Year.

(d) The maximum royalty payments payable by [Dad's and Pet Life] to [Gaines] hereunder in any Royalty Year shall be $440,000.

Between January 1, 2000 and September 1, 2001, Dad's and Pet Life made joint royalty payments to Gaines under the above-described terms. Dad's and Pet Life agreed to share in the joint and several Royalty Obligation in proportion to the estimated value of the Trademarks each received from Gaines.  Thus, Dad's was responsible for 40% of the Royalty Obligation and Pet Life was responsible for 60%.

      **B.**     **Maple Leaf**

Once Dad's and Pet Life obtained the trademarks from Gaines, they divided them such that Pet Life received trademarks associated with products that it produced and Dad's received trademarks associated with products it produced. Dad's and Pet Life also entered into a marketing arrangement under which they were able to sell the Trademark products to Gaines' former customers. While this arrangement was fairly detailed, it generally involved Dad's or Pet Life selling Trademark product to any customers with which they had an existing relationship.

Another part of this marketing arrangement involved former Gaines customers with whom neither Dad's nor Pet Life had an existing relationship. In an attempt to provide efficient service to these customers, Dad's and Pet Life entered into a joint venture through Maple Leaf, LLC, ("Maple Leaf). Maple Leaf was created by Dad's and Pet Life to serve as the customer contact for former Gaines customers that were not otherwise served by Dad's or Pet Life. When these "Maple Leaf customers" ordered product, they did so through Maple Leaf and its sales staff. Dad's and Pet Life produced product that would then be shipped from Maple Leaf to the customer. The Maple Leaf sales would then be allocated to Dad's and Pet Life based on the types of products sold.

By August, 2001, Dad's and Pet Life agreed to wind-down Maple Leaf. They did so for various reasons, including Dad's experience that Pet Life was unable to provide sufficient product to Maple Leaf. On August 1, 2001, Dad's and Pet Life entered into the Maple Leaf Settlement Agreement through which they agreed to wind-down Maple Leaf by December 31, 2001. As part of this Agreement, Dad's and Pet Life reaffirmed their joint and several Royalty Obligation to Gaines and their respective 40% and 60% split of that Obligation.

      C.      **Sergeant's Acquisition of the Trademarks and Assumption of Pet Life's Royalty Obligation.**

Unbeknownst to Dad's, at or before the time that Dad's and Pet Life were discussing the winding-down of Maple Leaf, Pet Life was also attempting to sell the Trademarks that it purchased from Gaines to an affiliate of Pet Life. On September 1, 2001, exactly one month after Dad's and Pet Life executed the Maple Leaf Settlement Agreement, Pet Life entered into a Trademark License and Transfer Agreement with Sergeant's (the "Trademark Transfer Agreement). Pursuant to relevant terms of the Trademark Transfer Agreement, Sergeant's purchased from Pet Life the Trademarks Pet Life had purchased from Gaines. To acquire these Trademarks, Sergeant's agreed to pay Pet Life $600,000 and to "assume and pay any and all additional payments due to Gaines Pet Foods Corp., pursuant to the Supplier and Royalty Agreement dated November 23, 1999, in an amount up to $270,000 . . ."

Neither Dad's nor Gaines was made aware of the existence or terms of the Trademark Transfer Agreement until after Sergeant's refused to make required royalty payment to Gaines. While Pet Life and Sergeant's did not notify Dad's of the existence or terms of the Trademark Transfer Agreement, Dad's was aware that Sergeant's had made Pet Life's share of the royalty payments for the 3rd and 4th quarters of 2001. Sergeant's and Pet Life also made Dad's aware that as part of the wind-down of Maple Leaf, which primarily involved the allocation of Maple Leafs customers, Sergeant's would be taking responsibility for many customers that would have otherwise gone to Pet Life.

Thus, while Dad's was not privy to the terms of the Trademark Transfer Agreement or even of its existence, Dad's did understand that Sergeant's was taking on Pet Life's share of the Royalty Obligation and that it was taking responsibility for many of the customers that Pet Life would otherwise serve. This shift did not strike Dad's as odd because, by September, 2001, both

Pet Life and Sergeant's were commonly owned and controlled. The majority shareholder of both was James Sowell. Alan Brown was also a shareholder in both and served as the chairman of board for both Sergeant's and Pet Life.

### D. Sergeant's refusal to honor its Royalty Obligation

Between September 1, 2001 and May 1, 2002, Dad's and Pet Life/Sergeant's completed the Maple Leaf wind-down. During that same period of time, Sergeant's made 60% of the royalty payments that were due to Gaines. Specifically, Sergeant's provided Dad's a check for $39,515.24 for the 3rd quarter of 2001 payment and paid $44,821.60 directly to Shato Holdings, Ltd. (Gaines sole shareholder), for the 4th quarter of 2001 payment.

The 1st quarter of 2002 royalty payment to Gaines was due by the end of April, 2002. On April 29, 2002, Dad's sent its share of the royalty payment to Gaines with an explanation that Sergeant's had not yet provided their share of the payment. Shortly after this letter, Dad's came to learn that in early May, 2001, Sergeant's and Pet Life entered into a series of transactions in an attempt to relieve Sergeant's of the Royalty Obligation it had assumed and with the end result of vesting ownership of the Trademarks previously owned by Pet Life in Sergeant's and leaving Pet Life insolvent. Pet Life and Sergeant's were commonly owned and controlled at this point and entered into these transactions with full knowledge that Pet Life was financially unable to make any royalty payments to Gaines.

Sergeant's and Pet Life informed Dad's that neither party would be making any royalty payment under the Royalty Agreement. Therefore, as a joint and several obligor with Pet Life and Sergeant's, Dad's was obligated to Gaines for 100% of the Royalty Obligation. To mitigate its damages, Dad's paid the full $72,813.21 1st quarter of 2002 royalty payment to Gaines. (Dwyer, pp. 32-34). Dad's and Gaines then entered into a settlement Agreement pursuant to

which Gaines accepted a lump sum payment of $750,000 in satisfaction of Dad's, Pet Life's and Sergeant's royalty obligations. Dad's agreed to this settlement in an attempt to mitigate its damages and after receiving notification from Pet Life and Sergeant's that they refused to make the required royalty payments. Dad's paid a total of $822,813.21 to satisfy the total Royalty Obligation to Gaines. Sergeants was responsible for 60% of this obligation. Thus, Sergeant's is liable to Dad's for $493,687.92.

II.     **WITNESSES:**

**WITNESS**

G. Thomas Lang
Dad's Products Company, Inc.
18746 Mill Street
Meadville, PA  16335-3644

Douglas Lang
Dad's Products Company, Inc.
18746 Mill Street
Meadville, PA  16335-3644

Richard A. Lang, Jr., President
Dad's Products Company, Inc.
18746 Mill Street
Meadville, PA  16335-3644

Richard D. Moyer
Dad's Products Company, Inc.
18746 Mill Street
Meadville, PA  16335-3644

Robert G. Dwyer, Esquire
Knox McLaughlin Gornall & Sennett, P.C.
120 West 10th Street
Erie, PA 16501

**WITNESS**

Alan D. Brown, Chairman
(as on cross-examination)
Pet Life Foods, Inc.
1601 Elm Street, Suite 300
Dallas, TX  75201

Stephen E. Smathers, Esq.
(as on cross-examination)
Sergeant's Pet Products, Inc.
1601 Elm Street, Suite 300
Dallas, TX  75201

Robert Scharf
(as on cross-examination)
Sergeant's Pet Products, Inc.
1601 Elm Street, Suite 300
Dallas, TX  75201

Custodians of records as needed to authenticate
documents not admitted by stipulation.

Dad's reserves the right to call any witnesses listed in the Pre-trial Narrative Statements of Sergeant's and to amend its witness list in accordance with applicable rules of court.

### III.   EXHIBITS

1. November 23, 1999 Asset Purchase Agreement among Pet Life Foods, Inc., Dad's Products Company, Inc., Gaines Pet Foods Corp., Gaines Pet Foods, Maple Leaf Marketing, Inc. and Shato Holdings, Ltd.

2. November 23, 1999 Supplier and Royalty Agreement between Pet Life Foods, Inc., Dad's Products Company, Inc., Gaines Pet Foods Corp., Gaines Pet Foods, Maple Leaf Marketing, Inc. and Shato Holdings, Ltd.

3. August 16, 2005 Deposition of Alan Brown

4. September 1, 2005 Deposition of G. Thomas Lang

**EXHIBITS**

| | |
|---|---|
| 5. | August 1, 2001 Settlement Agreement between Dad's Products Company, Inc. and Pet Life Foods, Inc. |
| 6. | September 1, 2001 Trademark License and Transfer Agreement between Pet Life Foods, Inc. and Sergeant's Pet Products, Inc. |
| 7. | September 1, 2005 Deposition of Robert G. Dwyer, Esquire |
| 8. | August 16, 2005 Deposition of Robert Scharf |
| 9. | August 16, 2005 Exhibits to Deposition of Robert Scharf |
| 10. | April 29, 2002 Letter of Edward C. Shields, of Dad's Pet Products, Inc. CPA to Mr. Sultan Thiara of Shato Holdings, Ltd. enclosing 1st quarter 2002 royalty payment |
| 11. | May 2, 2004 Notification and Cancellation Agreement between Pet Life Foods, Inc. and Sergeant's Pet Care Products, Inc. |
| 12. | May 3, 2002 Foreclosure Agreement among World Pet, LLC, LaSalle Business Credit, Inc. and Pet Life Foods, Inc. |
| 13. | May 23, 2002 Royalty Agreement |
| 14. | May 3, 2002 Settlement and Cooperation Agreement |
| 15. | Any and all documents produced in discovery by either party to this action. |

Dad's reserves the right to utilize or offer any exhibit listed in Sergeant's Pre-trial Narrative and to amend its exhibit list in accordance with applicable rules of court.

        Respectfully submitted,

        KNOX McLAUGHLIN GORNALL & SENNETT, P.C.

BY:   /s/Richard A. Lanzillo_____
       Richard A. Lanzillo
       PA ID# 53811
       Neal R. Devlin
       PA ID#  89223
       120 West Tenth Street
       Erie, PA  16501
       (814) 459-2800

       Attorneys for Plaintiff,
       Dad's Products Company, Inc.

\# 637028